OPINION OF THE COURT
 

 Wesley, J.
 

 Defendants Raphael and Aurora Henriquez own two buildings in Haverstraw, New York — 167 and 169 Broadway. 167 Broadway is a two-story building with two residential apartments and a ground floor delicatessen leased to Gregorio DeLeon. 169 Broadway has only residential units. Defendants also own the adjacent unpaved lot where residents of the buildings and their guests are permitted to park. The lot does not have designated parking spots — vehicles are parked in a haphazard manner made more random by a large tree in the center of the lot. The lot is also regularly used as a “cut-through” by people in the neighborhood. The lot is lit to some degree by a light on the back of DeLeon’s delicatessen. That light also illuminates a lot used by delicatessen customers and is operated by a switch in the delicatessen.
 

 Just before midnight on a rainy night in September 1996, plaintiff, defendants’ houseguest at 169 Broadway, parked her
 
 *142
 
 car in the unpaved lot. In an attempt to escape the rain, she quickly exited the car and ran through the lot toward the rear entrance of the apartment building where she and her family were staying. During her attempt to maneuver around vehicles parked in the dark lot, plaintiff ran into a bent antenna on a car owned by Julio Botex, a resident of 167 Broadway. Botex had parked his car in the lot approximately two hours before the accident. At that time there was no damage to the antenna. As a result of the accident, plaintiff sustained a serious injury to her left eye.
 

 Plaintiff brought suit against defendants, Botex and DeLeon for her injuries. As relevant here, she alleged that defendants had a general duty to illuminate the unpaved lot and thus created a dangerous condition that caused her injury. Defendants countered the delicatessen light was on and was adequate to illuminate the parking lot in question. Following the close of proof at trial, defendants’ counsel, relying on
 
 Gallagher v St. Raymond’s R.C. Church
 
 (21 NY2d 554 [1968]), argued that the lot was not open to the public and thus defendants had no duty to illuminate that area of their property.
 

 Defendants then asked the court to charge PJI 2:91. Ultimately, the court gave a truncated version of PJI 2:91 that deleted reference to the element of notice. In explaining the charge, the court indicated a notice instruction was not appropriate as the failure to light the parking lot constituted a defect created by the owners. The jury returned a verdict for plaintiff and apportioned liability for plaintiff’s injuries between defendants (82%) and plaintiff (17%) while exonerating Botex from liability.
 
 [1]
 
 Defendants appealed.
 

 The Appellate Division affirmed. Citing
 
 Gallagher,
 
 the Court found that defendants “had a duty to provide adequate lighting in the lot at the time of the plaintiff’s accident” because they “permitted tenants and guests to park in [their] lot 24 hours per day” (292 AD2d 514, 514 [2d Dept 2002]). The Appellate Division also held that because defendants created the dangerous condition that led to the accident, notice was not at issue
 
 *143
 
 and defendants therefore were not entitled to a jury charge on notice.
 

 On appeal, defendants maintain that as private landowners, they had no duty to illuminate the lot. Moreover, in their view, the trial court erred when it removed the notice instruction from the jury charge on their duty as landowners.
 

 In
 
 Gallagher,
 
 plaintiff fell as she attempted to reach for a handrail while leaving an evening meeting of her religious society at a parish school. The handrail area was lit at the time the meeting began but someone had extinguished the light before the meeting concluded. Thus, this Court was called upon to examine whether the claim was precluded by the traditional common-law rule that landowners had no duty to illuminate the common areas or stairways of their property.
 

 We began our analysis by observing that “[w]henever the general public is invited into stores, office buildings and other places of public assembly, the owner is charged with the duty of providing the public with a reasonably safe premises, including a safe means of ingress and egress” (21 NY2d at 557). Indeed, we specifically indicated that had plaintiff fallen because of a hole or a defective step the landowner’s breach of its duty would not be in doubt.
 

 We then noted the common-law rule was formulated at a time when gas was the major source of lighting and electricity was not readily available at low cost
 
 (see id.; see also Hilsenbeck v Guhring,
 
 131 NY 674 [1892]). We traced the technological changes in lighting from the inception of the common-law rule and juxtaposed those developments to the common-law standard. Concluding the traditional rule “no longer expresses a standard of care which accords with the mores of our society,” we held there was no reason why in 1968 “the owner of a public building should not be required to light the exterior of [the] building at those times when it is open to the public” (21 NY2d at 558).
 

 Eight years later we revisited the duty equation for landowners in
 
 Basso v Miller
 
 (40 NY2d 233 [1976]). We noted that the status of the plaintiff had long been determinative of the landowner’s duty of care. The case law in this area had developed three categories of potential plaintiffs based on the purpose of their visit to the property. The task of fitting a plaintiff into one of those categories resulted in confusion and conflict. The Court reasoned that it made sense to abandon those distinctions and focus the relevant inquiry not on the
 
 *144
 
 status of the plaintiff, but on the conduct of the defendant. Thus, we adopted a single standard of reasonable care. Specifically we held, “[a] landowner must act as a reasonable [person] in maintaining his [or her] property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk”
 
 (id.
 
 at 241, quoting
 
 Smith v Arbaugh’s Rest., Inc.,
 
 469 F2d 97, 100 [DC Cir 1972]).
 

 Contrary to the contentions of the parties, the resolution of the duty equation in this case does not turn on whether the parking lot in question was public or
 
 private
 
 — Gallagher and
 
 Basso
 
 do not impose different duty standards. Landowners have a duty to maintain their property in a reasonably safe condition whether the property is open to the public or not. The use to which one’s property is put, and the frequency of that use by others, weigh heavily in determining the likelihood of injury, the seriousness of the injury and the burden of avoiding the risk. Thus, it made perfect sense in
 
 Gallagher
 
 to impose a duty on the church to illuminate the steps and handrails of its parish school given the public use of the building. By allowing the public to use a facility a landowner expands the pool of anticipated users. Lighting the stairs was a simple and economical way to avoid injury to nighttime visitors to the parish school.
 

 Similarly, providing outside lighting to one’s property may be a reasonable response by a private landowner who knows, or should know, that someone will visit the property and confront a hazard that would be reasonably avoided by illumination. The
 
 Basso
 
 rule is fact based and grounded in the practical realities of today’s life. It does not impose strict liability but rather requires that the landowner act reasonably when considering all the circumstances.
 
 [2]
 

 Courts have long fixed the duty point by balancing factors, “including the reasonable expectations of parties and society generally, the proliferation of claims, the likelihood of unlimited or insurer-like liability, disproportionate risk and reparation allocation, and public policies affecting the expansion or limitation of new channels of liability”
 
 (Palka v Servicemaster Mgt. Servs. Corp.,
 
 83 NY2d 579, 586 [1994]). Moreover, courts must
 
 *145
 
 be mindful of the future effects their ruling will have and must “limit the legal consequences of wrongs to a controllable degree”
 
 (Tobin v Grossman,
 
 24 NY2d 609, 619 [1969]).
 

 Judicial recognition of a duty of care must be based upon an assessment of its efficacy in promoting a social benefit as against its costs and burdens
 
 (see Waters v New York City Hous. Auth.,
 
 69 NY2d 225, 230 [1987]). Were we to impose a general duty of care requiring landowners to illuminate their property during all hours of darkness, the financial and environmental costs would surely outweigh any social benefit. Moreover, finding a failure to illuminate alone created a dangerous condition would produce an indeterminate class of plaintiffs without any reasonable limitations on liability. The unexpected guest or the vacationing homeowner might soon be swept into the duty’s reach
 
 (see e.g. Miccoli v Kotz,
 
 278 AD2d 460 [2d Dept 2000]).
 

 As in
 
 Gallagher,
 
 we would be hard pressed to conclude that a landowner with knowledge of a condition easily alleviated by illumination (such as a curb or a step) is not required to light the area. But plaintiff seeks a general duty to illuminate the lot. In her view, an unlit lot is per se dangerous. She contends the dangerous condition is the inadequate illumination of the lot. In our view, the duty is not a generalized one-size-fits-all duty, it is a remedy employed by a landowner to avoid injury to others that is measured by
 
 Basso.
 

 At trial, defendants requested the
 
 Basso
 
 charge set out in PJI 2:91. Plaintiff countered that the charge should be modified to delete the instruction regarding notice of a dangerous condition on the ground that defendants had a duty to light the lot and their reliance on the lighting on the adjacent delicatessen “created” an inadequate lighting condition. While a defendant’s creation of a dangerous condition may relieve a plaintiff from having to prove notice of that condition, here the allegedly dangerous condition at most arose from the adequacy of the existing lighting not from installation of lights. To hold otherwise would be to punish well-intentioned landowners who take steps to illuminate their property. Thus, reversal is warranted in this case because, based on this record, the jury should have been asked to determine if defendants knew or should have known that the existing lighting was adequate given the use and design of the lot.
 
 [3]
 

 We have considered defendants’ remaining contentions and find them without merit. Accordingly, the order of the Appel
 
 *146
 
 late Division should be reversed, with costs, and a new trial ordered.
 

 Chief Judge Kaye and Judges Smith, Ciparick, Rosenblatt, Graffeo and Read concur.
 

 Order reversed, etc.
 

 [1]
 

 . Pursuant to the court’s initial charge, the jury made no finding as to the liability of DeLeon, who had defaulted in the proceeding. After further instructions from the court the jury found DeLeon 1% negligent. Defendants raise the propriety of the court’s supplemental instruction with regard to DeLeon’s negligence in apportioning liability in light of CPLR article 16. We have reviewed the court’s supplemental charge in that regard and conclude it was adequate to allow the jury to apportion liability as required by CPLR 1601.
 

 [2]
 

 . There are some areas where a duty to illuminate has been imposed by law. For example, the New York State Multiple Dwelling Law, applicable to cities with populations of 325,000 or more, prescribes a specific duty of care and requires owners of multiple dwellings to install and maintain lights at various locations of the premises (Multiple Dwelling Law § 26 [7-a]).
 

 [3]
 

 . Defendants did not contend at trial or on appeal that plaintiffs injuries were not foreseeable as a matter of law.