[841 NE2d 747, 807 NYS2d 588]

Estelle Gilson et al., Appellants, v Metropolitan Opera, Respondent, et al., Defendants.

Argued October 19, 2005; decided November 22, 2005

## POINTS OF COUNSEL

*Mischel & Horn, P.C.*, New York City (*Scott T. Horn* of counsel), and *Law Offices of John C. Dearie & Associates* for appellants. The Appellate Division erred as a matter of law in granting defendant's motion for summary judgment dismissing the complaint. (*Di Ponzio v Riordan,* 89 NY2d 578; *Kush v City of Buffalo,* 59 NY2d 26; *Basso v Miller,* 40 NY2d 233; *Rizk v Cohen,* 73 NY2d 98; *Minelli v Good Samaritan Hosp.,* 213 AD2d 705; *Gant v Sparacino,* 203 AD2d 515; *Glick & Dolleck v Tri-Pac Export Corp.,* 22 NY2d 439; *S.J. Capelin Assoc. v Globe Mfg. Corp.,* 34 NY2d 338; *Ferrante v American Lung Assn.,* 90 NY2d 623; *Sillman v Twentieth Century-Fox Film Corp.,* 3 NY2d 395.)

*McCabe, Collins, McGeogh & Fowler, LLP,* Carle Place (*Patrick M. Murphy* of counsel), for respondent. I. The proof submitted on the motion clearly demonstrated that plaintiffs-appellants had no cause of action against defendant-respondent Metropolitan Opera. (*Lawes v Board of Educ. of City of N.Y.,* 16 NY2d 302; *Grant v Metropolitan Transp. Auth.,* 67 AD2d 611; *Basso v Miller,* 40 NY2d 233; *Alfaro v Wal-Mart Stores, Inc.,* 210 F3d 111; *Newsome v Cservak,* 130 AD2d 637; *Prince v New York City Hous. Auth.,* 302 AD2d 285; *Crosland v New York City Tr. Auth.,* 68 NY2d 165; *Lesser v Manhattan & Bronx Surface Tr. Operating Auth.,* 157 AD2d 352; *Caputo v New York City Tr. Auth.,* 86 AD2d 883; *Clarke v New York City Tr. Auth.,* 174 AD2d 268.) II. Plaintiffs-appellants' newly minted claims of New York City Building Code violations are insufficient to create a triable question of fact. (*Murphy v Conner,* 84 NY2d 969; *Goncalves v Regent Intl. Hotels,* 58 NY2d 206; *Derdiarian v Felix Contr. Corp.,* 51 NY2d 308.) III. Plaintiffs-appellant's claims regarding the violation of rules and New York City Building Code violations which had been withheld from the pleadings and bill of particulars were insufficient to create a triable question of fact. (*Maynard v New York City Tr. Auth.,* 267 AD2d 37; *Spiteri v Chatwal Hotels,* 247 AD2d 297; *Boland v Koppelman,* 251 AD2d 176; *Vine v*

*Manville Sales Corp.,* 175 AD2d 380; *Sanna v Potter,* 179 AD2d 982; *Dodes v North Shore Univ. Hosp.,* 149 AD2d 455; *Ifrach v Neiman,* 306 AD2d 380.)

**OPINION OF THE COURT**

CIPARICK, J.

According to plaintiffs, on December 3, 2001, plaintiff Estelle Gilson attended a performance at the Metropolitan Opera. She sat in the aisle seat in the same row where Donald Taitt (who suffers from Parkinson's disease and walked unsteadily) and his wife were seated. During the 20-minute intermission, plaintiff left her seat, and returned prior to the second act. The Taitts also left their seats during the intermission, but returned unescorted after the houselights had dimmed and the second act had begun. As the Taitts reached their row, plaintiff rose from her seat and moved down into the stepped aisle to allow the Taitts to pass. Donald Taitt then lost his balance and fell onto plaintiff, causing her to fall down four steps into the balcony railing and injure herself.

Plaintiffs commenced this action alleging that the injuries were caused by the negligence of defendant in the ownership, operation, management, supervision, maintenance and control of its premises. Defendant moved to dismiss the complaint pursuant to CPLR 3211 (a) (7), or in the alternative for summary judgment pursuant to CPLR 3212, arguing that it did not breach any duty owed to plaintiff.* Without commenting on the motion to dismiss, Supreme Court denied defendant's motion for summary judgment holding that issues of fact precluded summary judgment. A divided Appellate Division reversed, concluding that Metropolitan Opera did not breach any recognized duty owed to plaintiff (15 AD3d 55 [1st Dept 2005]). Plaintiffs appeal as of right on the basis of the two-Justice dissent, and we now affirm.

In any negligence action, the threshold issue before the court is whether the defendant owed a legally recognized duty to the plaintiff. As we observed only last month in *Matter of New York City Asbestos Litig.* (5 NY3d 486, 493 [2005]), we make this determination "by balancing factors, including the reasonable expectations of parties and society generally, the proliferation of claims, the likelihood of unlimited or insurer-like liability,

---

* The complaint also named Lincoln Center for the Performing Arts and Donald Taitt as defendants. Supreme Court dismissed the action against Lincoln Center; defendant Taitt did not appear.

disproportionate risk and reparation allocation, and public policies affecting the expansion or limitation of new channels of liability." We noted our reluctance to extend the duty of care such that a defendant may become liable for failure to control the conduct of others, imposing such duty only where "the defendant's relationship with either the tortfeasor or the plaintiff places the defendant in the best position to protect against the risk of harm; and that the specter of limitless liability is not present" (*id.* at 494 [internal quotation marks omitted]).

Here, plaintiffs argue that in exercising its duty of care to its patrons, defendant had an affirmative duty to escort Taitt to his seat because of his obvious infirmity. Defendant counters that plaintiffs' proposed duty would place undue burden on theater owners beyond the limits of the duty to maintain their premises in reasonably safe condition. We agree with defendant.

Adopting plaintiffs' proposed duty would significantly enlarge the duty of theater owners to their patrons. Defendant cannot be "an insurer of the safety of [its patrons, and its] duty is only to exercise reasonable care for their protection" (Prosser and Keeton, Torts § 61, at 425 [5th ed]). Moreover, defendant's relationship both to plaintiffs and Taitt did not put it in the best position to protect from the risk of harm posed by Taitt's infirmity (*see Alfaro v Wal-Mart Stores, Inc.,* 210 F3d 111 [2d Cir 2000]).

Additionally, plaintiffs argue and the dissent concludes that defendant's "Performance Staff Rules and Guidelines" provide some independent evidence of negligence. The internal policy upon which plaintiffs rely provided that "[t]icket holders should be escorted to their seats with the aid of flashlights when the House Lights are low, and particularly requested to watch their step." These internal guidelines go beyond the standard of ordinary care and cannot serve as a basis for imposing liability. As we stated in *Sherman v Robinson* (80 NY2d 483, 489 n 3 [1992]), "[v]iolation of a company's internal rules is not negligence in and of itself, and where such rules require a standard that transcends reasonable care, breach cannot be considered evidence of negligence."

Accordingly, the order of the Appellate Division should be affirmed, with costs.

G.B. SMITH, J. (dissenting). Because there are material questions of fact as to whether employees of the Metropolitan Opera

were negligent when they permitted an infirm patron to enter a darkened auditorium without assistance or lighting, summary judgment should not have been granted. Accordingly, I dissent.

Plaintiff Estelle Gilson attended a performance of the Metropolitan Opera (Met) at Lincoln Center in December 2001, sitting in an aisle seat. An elderly couple with seats inside the row, Donald and Caroline Taitt, returned approximately 10 minutes late from an intermission, after the houselights had gone down, without any assistance from ushers. Donald Taitt suffered from Parkinson's disease and Alzheimer's disease and, allegedly, looked particularly infirm on this night. When plaintiff Gilson got up and stepped into the aisle to give the Taitts room to pass, Donald Taitt lost his balance and fell into her, knocking her down some steps and into the balustrade at the edge of the balcony. These are the alleged facts.

The trial court denied the Met's motion for summary judgment, stating there were "questions of fact including, but[ ] not limited to[,] whether defendant maintained the stair aisles in a dangerous manner thereby causing a dangerous condition which caused the plaintiff's accident" (*Gilson v Metropolitan Opera*, Sup Ct, Bronx County, Apr. 9, 2004, Index No. 6001/02). The Appellate Division reversed the order and dismissed the claim against the Met in a 3-2 decision. The majority reasoned that the facts did not demonstrate that the Met had a duty to provide an escort for Mr. Taitt. The two-Justice dissent disagreed, arguing that there were material issues of fact requiring a trial.

Only the existence of a bona fide issue raised by evidentiary facts and not one based on conclusory or irrelevant allegations will suffice to defeat summary judgment (*Rotuba Extruders v Ceppos*, 46 NY2d 223 [1978]). "Summary judgment is often termed a drastic remedy and will not be granted if there is any doubt as to the existence of a triable issue. . . . It does not deny the parties a trial; it merely ascertains that there is nothing to try" (Siegel, NY Prac § 278, at 459-460 [4th ed]).

In *Longacre v Yonkers R.R. Co.* (236 NY 119, 123 [1923]), this Court held that a jury had the right to determine whether employees of a railroad breached the standard of reasonable care when they failed to recognize the growing danger that two unruly children created for themselves as they ran about the railcar unrestrained. The Court reasoned that although there was no duty to operate railcars for the purpose of safely carrying unruly children, a motorman's failure to do any reasonable thing to prevent an accident could have fallen short of reasonable care. The Court wrote:

"The real and full question is whether the [railroad's] employees when they saw two young children escaping from their attendant and running about the car ought to have done some reasonable thing to prevent such an accident as happened. It was not bound to take the particular step of closing the vestibule doors or of closing the doors leading to the platform or of driving the children back into the car or of putting them off of the car. . . . [B]ut we think that a jury had the right to say that when it failed to exercise any of them it fell short of reasonable care. Of course a railroad is not bound to construct or operate its cars for the purpose of safely carrying unruly children or drunken adults." (*Id.* at 124.)

Likewise, in the present matter, a jury should be given the opportunity to say that the Met's conduct did or did not fall short of reasonable care when employees let Mr. Taitt into the theater without an usher escorting him with a flashlight, despite the Met's argument that it had no duty to look out for infirm patrons.

In concluding that defendant is entitled to summary judgment, this Court ignores its own precedents. In *Basso v Miller* (40 NY2d 233 [1976]), we held that a defendant has a duty to keep its premises in a reasonably safe condition. This Court stated further that a landowner must act as a reasonable person in maintaining his or her property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk (*id.* at 241). In *Gallagher v St. Raymond's R.C. Church* (21 NY2d 554, 557 [1968]), this Court stated: "Whenever the general public is invited into stores, office buildings and other places of public assembly, the owner is charged with the duty of providing the public with a reasonably safe premises, including a safe means of ingress and egress." Providing lighting to one's property may be a reasonable response for a private landowner who knows, or should know, that someone visiting his property will confront a hazard that could be reasonably avoided by illumination (*Peralta v Henriquez*, 100 NY2d 139, 144 [2003]). The majority argues that defendant, through its employees, was not in a position to assess the risk posed by Mr. Taitt's ambulation. This argument ignores the Met's basic duty to keep patrons from harm since "[l]andowners have a

duty to maintain their property in a reasonably safe condition whether the property is open to the public or not" (*id.*). Moreover, the Met's internal policy recognizes the use of a flashlight as being important.* If a trial were allowed, plaintiff could attempt to prove that the Met was negligent in failing to provide a flashlight and to show that the failure was not even in accord with the Met's internal rule since a darkened auditorium is unsafe for an elderly patron with troubled ambulation (*but see Longacre v Yonkers R.R. Co., supra* at 125 [stating that where internal rules transcend reasonable care and the rule had no reference to the prevention of an accident as occurred, breach cannot be considered evidence of negligence]).

The majority grounds its opinion in the belief that the duty to keep the premises safe does not extend to plaintiff Gilson or Mr. Taitt. The defendant had a duty to protect its patrons from harm caused by conditions on its premises. As the dissenting Justices below stated, these facts include whether the ushers should have let Mr. Taitt return to his seat, whether the stairs were lit to a level that fell short of industry standards, whether this created a dangerous condition for other patrons, whether the ushers saw Mr. Taitt walking in an unstable fashion, whether an usher should have accompanied Mr. Taitt, and whether Mrs. Gilson's injury was a foreseeable consequence of the Met's alleged breach of reasonable care. The expert affidavit offered by appellant stated:

> "The light in the aisle measured below two foot candles which is insufficient lighting and in violation of the New York City Building Code section 27-381.a, (c), (e) (1). . . .
>
> "It is my opinion with a reasonable degree of

---

* The Performance Staff Rules and Guidelines state:
  "For reasons of safety and because no one is seated once the performance begins, every effort should be made to see that ticket holders do not cluster inside the entrance to the Auditorium prior to or during the performance. All ticket holders should be seated quietly and efficiently, especially when the house lights are down or during a late seating . . . .
  "NO ONE SHOULD BE ADMITTED OR READMITTED TO THE AUDITORIUM WHILE THE PERFORMANCE IS IN PROGRESS EXCEPT WITH DIRECT AUTHORIZATION FROM THE PERFORMANCE MANAGER. . . .
  "Ticket holders should be escorted to their seats with the aid of flashlights when the House lights are low, and particularly requested to watch their step."

engineering certainty that the Metropolitan Opera house creates a dangerous and unsafe condition for pedestrians on the aisles of the Dress Circle Section when the house lights are down."

The Met disputes the relevance of plaintiffs' expert's affidavit, as the area tested was not the same aisle Mrs. Gilson fell in on the night in question. Defendant also questions the relevance of the expert's findings since there is no evidence that the lighting on the night he tested was the same as the night of the accident. The expert affidavit is enough, however, to establish a question of fact of whether the Met exercised reasonable care.

Similar to the dissenting Justices below, I do not rely only on the Met's internal guidelines or the alleged New York City Building Code violations. As patrons, both appellant and Mr. Taitt were owed a duty of maintained safe premises. Employees of the Met made a discrete decision to let Mr. Taitt into the performance once intermission had ended. Therefore, under the totality of circumstances, the question of whether they acted reasonably should be left to the jury.

For the foregoing reasons, I dissent.

Chief Judge KAYE and Judges ROSENBLATT, GRAFFEO, READ and R.S. SMITH concur with Judge CIPARICK; Judge G.B. SMITH dissents and votes to reverse in a separate opinion.

Order affirmed, with costs.