◼ PETER MILLER, Respondent, v CONSOLIDATED RAIL CORPORATION et al., Appellants. [837 NYS2d 783]—

Carpinello, J. Appeal from an order of the Supreme Court (Teresi, J.), entered January 11, 2007 in Albany County, which denied defendants' motion for summary judgment dismissing the complaint.

Defendant CSX Transportation, Inc. owns a parcel of property in Albany County known as the "Selkirk Yard" on which it operates a railroad yard. Within the Selkirk Yard is an area known as the "auto yard." The auto yard is a 55-acre parking lot containing 4,100 parking bays. Five high mast towers, as well as perimeter lights, illuminate the auto yard at night. During the course of a regular work day (i.e., 7:00 A.M. through 3:00 P.M.), CSX employees unload automobiles from railroad cars and park them in the bays so that independent hauling companies can load them onto trucks and transport them to car dealerships. The auto yard is not open to the public; rather, only hauling companies have access to it and that access is available 24 hours per day. CSX, however, does not manage or control the manner in which these hauling companies perform their jobs. Drivers employed by the trucking companies are simply required to log in with a security guard at the entrance of the auto yard.

On December 12, 2001, plaintiff was employed as a car hauler by one such hauling company (i.e., Allied Systems, Inc.).[1] Upon reporting to work at the Allied facility on the day in question, plaintiff was advised by an Allied dispatcher that there was a power outage at the auto yard. Despite the darkened condition of the auto yard, plaintiff was directed to work but cautioned to be careful. In the course of loading cars onto his truck, plaintiff allegedly tripped on the ramp of another Allied truck that had parked next to him. He thereafter commenced this action against CSX and defendant Consolidated Rail Corporation seeking to recover for his injuries. Plaintiff's theory of liability as articulated in his complaint and bill of particulars is that defendants failed to provide adequate lighting in the auto yard, failed to provide backup and/or emergency lighting in the auto yard and failed to warn plaintiff about the condition of the auto yard on the day in question. Defendants moved for summary judgment, which was denied by Supreme Court prompting this appeal.

Two issues can be readily disposed of in favor of defendants. First, since it is undisputed that Consolidated Rail did not own, lease, maintain, operate or manage the subject premises at the time of the accident, summary judgment should have been granted to it (see e.g. *Quintanta v City of New York*, 302 AD2d 224, 225 [2003]; *Tageldein v Rockefeller Ctr.*, 262 AD2d 109 [1999]; *Kiselis v Speculator Chamber of Commerce*, 234 AD2d

---

1. CSX and Allied had a written agreement pursuant to which Allied was permitted to enter the auto yard for hauling operations. This agreement did not obligate CSX to provide any type of lighting, particularly emergency lighting, and did not mandate that the auto yard be open 24 hours per day.

677, 678 [1996]; *Cullen v Lake Placid Vacation Corp.*, 221 AD2d 854, 855 [1995]). Next, since the darkened condition of the auto yard was open, obvious and known to plaintiff—he having been specifically advised about the power outage upon reporting to work that day—CSX was entitled to dismissal of the failure to warn claim (*see Tagle v Jakob*, 97 NY2d 165, 169-170 [2001]; *MacDonald v City of Schenectady*, 308 AD2d 125, 126 [2003]; *Soich v Farone*, 307 AD2d 658, 659-660 [2003]). The more difficult question is the threshold issue of whether CSX owed a legally recognized duty to plaintiff to provide some type of emergency lighting in the auto yard or to close it in the event of a power outage (*see Gilson v Metropolitan Opera*, 5 NY3d 574, 576 [2005]).

As a general rule, a landowner must maintain its property "in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk" (*Basso v Miller*, 40 NY2d 233, 241 [1976]). "Unlike foreseeability and causation, which are issues generally and more suitably entrusted to fact finder adjudication, the definition of the existence and scope of an alleged tortfeasor's duty is usually a legal, policy-laden declaration reserved for Judges to make prior to submitting anything to fact-finding or jury consideration" (*Palka v Servicemaster Mgt. Servs. Corp.*, 83 NY2d 579, 585 [1994] [citations omitted]). As the Court of Appeals has repeatedly observed, "[c]ourts have long fixed the duty point by balancing factors, including the reasonable expectations of parties and society generally, the proliferation of claims, the likelihood of unlimited or insurer-like liability, disproportionate risk and reparation allocation, and public policies affecting the expansion or limitation of new channels of liability" (*Peralta v Henriquez*, 100 NY2d 139, 144 [2003] [internal quotation marks and citation omitted]; *accord Gilson v Metropolitan Opera supra* at 576-577; *Matter of New York City Asbestos Litig.*, 5 NY3d 486, 493 [2005]). "Further, [f]oreseeability, alone, does not define duty—it merely determines the scope of the duty once it is determined to exist" (*Matter of New York City Asbestos Litig., supra* at 493 [internal quotation marks and citation omitted]). Indeed, "courts must be mindful of the future effects their ruling will have and must limit the legal consequences of wrongs to a controllable degree" (*Peralta v Henriquez, supra* at 144-145 [internal quotation marks and citation omitted]).

On the precise issue of the duty to provide exterior lighting, the Court of Appeals has specifically refused to impose "a general duty of care requiring landowners to illuminate their prop-

erty during all hours of darkness [in that] the financial and environmental costs would surely outweigh any social benefit" (*id.* at 145). The Court of Appeals further held that "finding a failure to illuminate alone created a dangerous condition would produce an indeterminate class of plaintiffs without any reasonable limitations on liability" (*id.*). Applying each of the foregoing principles to the precise facts of this case, and balancing all relevant factors, we find no legally cognizable duty on the part of CSX to provide back up and/or emergency lighting or to close the auto yard during a power outage. Several factors compel this conclusion.

First, CSX provided standard exterior lighting which sufficiently illuminated the auto yard during all hours of darkness absent a power outage (*cf. id.*), which was not a common occurrence.[2] Indeed, CSX had never received any complaints from any hauling company about the lighting in the auto yard. Next, CSX did not create the condition that caused the subject power outage and immediately took steps to remedy the problem and in fact had power restored within 4½ hours (*cf. Goldstein v Consolidated Edison Co. of N.Y.*, 115 AD2d 34 [1986], *lv denied* 68 NY2d 604 [1986]).[3] Importantly, we note that plaintiff does not allege that this time period was itself unduly lengthy.

Moreover, CSX had no control over Allied employees, had no control over Allied's hauling schedule and played no role in Allied's business decision to perform loading operations that day despite the known darkened condition of the auto yard (*cf. Demshick v Community Hous. Mgt. Corp.*, 34 AD3d 518 [2006]; *Goldstein v Consolidated Edison Co. of N.Y.*, supra). Nor did the agreement between these two entities mandate any sort of lighting at the auto yard or 24-hour access to it (*see* n 1, supra). Furthermore, the auto yard was at all times closed to the public and only available to hauling companies who had the ability to illuminate the vicinity of their hauling operations by the lights on their trucks, as well as the lights on the automobiles being hauled (*cf. Gallagher v St. Raymond's R.C. Church*, 21 NY2d 554 [1968]).

Finally, plaintiff's proposed duty would place an undue burden on property owners beyond the limits of the duty to maintain

---

2. To be sure, no issue of fact has been raised on this precise point. While there was testimony that there have been approximately 25 power outages over the years at the *Selkirk Yard* generally, power outages at the *auto yard* were rare. Even plaintiff concedes in his brief that power outages were "not common" at the auto yard.

3. Plaintiff's alleged accident took place within the first two hours of the power outage.

their premises in a reasonably safe condition (*see e.g. Gilson v Metropolitan Opera, supra*). In other words, under the facts and circumstances of this case, we find that CSX maintained the auto yard in a reasonably safe condition and owed no additional duty to provide emergency lighting (*see generally Peralta v Henriquez, supra*; *Kimbar v Estis*, 1 NY2d 399 [1956]) or close the auto yard during a power outage (*see Cimino v Town of Hempstead*, 110 AD2d 805, 806 [1985], *affd* 66 NY2d 709 [1985]). To hold otherwise would impose impracticable conditions on property owners (*see e.g. Kimbar v Estis, supra* at 405) and lead to limitless liability (*see e.g. Matter of New York City Asbestos Litig., supra*; *Hamilton v Beretta U.S.A. Corp.*, 96 NY2d 222, 232 [2001]; *Pulka v Edelman*, 40 NY2d 781, 786 [1976]). Thus, summary judgment should have been granted to CSX and the complaint dismissed against it as well.

Mercure and Mugglin, JJ., concur.

Kane, J. (concurring in part and dissenting in part). We respectfully dissent from so much of the majority decision as dismissed the complaint against defendant CSX Transportation, Inc. CSX, the landowner here, had a duty to maintain its premises " 'in a reasonably safe condition in view of all the circumstances' " (*Basso v Miller*, 40 NY2d 233, 241 [1976], quoting *Smith v Arbaugh's Rest., Inc.*, 469 F2d 97, 100 [1972], *cert denied* 412 US 939 [1973]). CSX owed this duty to plaintiff, a person who was authorized to and was reasonably likely to be present on the premises. Whether CSX was required to install emergency lighting or close the auto yard during a black out does not affect the existence of that duty, but instead is relevant to whether CSX breached its duty. The question of breach of duty is generally a factual one best answered by the jury (*see Peralta v Henriquez*, 100 NY2d 139, 145-146 [2003]). Hence, summary judgment as to CSX is inappropriate here.

Cardona, P.J., concurs. Ordered that the order is reversed, on the law, with costs, motion granted, summary judgment awarded to defendants and complaint dismissed.