[929 NYS2d 620]

DORONISH K. ALNASHMI, Respondent, v CERTIFIED ANALYTICAL GROUP, INC., Appellant.

Second Department, September 13, 2011

APPEARANCES OF COUNSEL

*Goldberg Segalla LLP*, Mineola (*Brian W. McElhenny* of counsel), for appellant.

**OPINION OF THE COURT**

BALKIN, J.

As the law of premises liability has developed in this state, it has moved inexorably, by statute and common law, in the direction of providing greater protection to persons on premises. This appeal presents us with an occasion to re-examine the common law as to the responsibility of out-of-possession landowners for injuries arising from dangerous conditions on leased premises. We must determine whether an out-of-possession landlord that has retained a broad right of reentry for the purpose of inspection and repair thereby retained its original duty as a landowner to keep the premises reasonably safe, even where the lease placed the burden of maintenance and repair squarely on the tenant.

## I

By a 20-year lease commencing in 1994, Certified Laboratories, Inc. (hereinafter CLI) leased the entire one-story building at 200 Express Street in Plainview from the owner of the building, Certified Analytical Group, Inc. (hereinafter CAG). CAG, which had no employees, was wholly owned by Martin Mitchell, who also was the majority shareholder of CLI. Mitchell signed the lease on behalf of both CLI and CAG. Under that lease, CLI was required, among other things, to "take good care of the demised premises, fixtures and appurtenances, and all alterations, additions and improvements to either; make all repairs in and about the same necessary to preserve them in good order and condition . . . [and] promptly pay the expense of such repairs." As well, CLI was required to

"permit at all times during usual business hours, the Landlord . . . to enter the demised premises for the purpose of inspection . . . suffer the Landlord to make repairs and improvements to all parts of the building, and to comply with all orders and requirements of governmental authority applicable to said building or to any occupation thereof; suffer the Landlord to erect, use, maintain, repair and replace pipes and conduits in the demised premises and to the floors above and below."

In another section of the lease, CAG reserved the right to

"visit and examine [the premises] at any reasonable hour of the day, and workmen may enter at any time when authorized by the Landlord . . . to make or facilitate repairs in any part of the building; and if the said Tenant shall not be personally present to open and permit an entry into said premises, at any time, when for any reason an entry therein shall be necessary or permissible hereunder, the Landlord or the Landlord's agents may forcibly enter the same . . . it is, however, expressly understood that the right and authority hereby reserved, does not impose, nor does the Landlord assume, by reason thereof, any responsibility or liability whatsoever for the care or supervision of said premises, or any of the pipes, fixtures, appliances or appurtenances therein contained or therewith in any manner connected."

The lease also required CLI to obtain CAG's written consent before installing or using any "water cooler, air conditioning unit or system or other apparatus." Finally, it required CLI to indemnify CAG for any liability imposed on CAG arising from CLI's acts or omissions.

In the spring or early summer of 2005, CLI contracted and paid for the installation of a new roof because of a recurrent water condition in the building. The water condition continued to recur even after the new roof was installed, and the contractor, the third-party defendant Griffin Bros., Inc. (hereinafter Griffin), returned two or three times to perform additional work. The condition persisted, and, during the winter of 2006, two ceiling tiles in a hallway between the lunchroom and the time clock were removed and a large drum was usually placed in and around that part of the building to catch the water.

On Sunday, April 23, 2006, a rainy day, the plaintiff, Doronish K. Alnashmi, who was employed by CLI as a laboratory technician, allegedly was injured when she slipped and fell on water that had accumulated in the hallway. According to the plaintiff's deposition testimony, drums were not present when she had reported for work that day, and she did not see at that time if water was dripping from the ceiling where the ceiling tiles had been removed (and had not yet been replaced). Later in the day, however, she saw water dripping from the ceiling in that area. The floor mat was soaked and water had puddled on the floor nearby. Some time after the date of the plaintiff's accident, Griffin returned, and eventually the water condition was resolved.

The plaintiff received Workers' Compensation Law benefits through CLI, and she commenced this action against CAG. CAG commenced a third-party action against Griffin. After the completion of discovery, CAG moved for summary judgment dismissing the complaint, asserting that it was an out-of-possession landlord with no responsibility for maintenance or repair. Griffin separately moved for summary judgment dismissing the third-party complaint. The Supreme Court denied both motions. CAG appeals, but in its brief asserts that it has discontinued the third-party action against Griffin.

## II

Premises liability, as with liability for negligence generally, begins with duty (see *Palka v Servicemaster Mgt. Servs. Corp.*, 83 NY2d 579, 584 [1994]; *Waters v New York City Hous. Auth.*, 69 NY2d 225, 228 [1987]; *Forbes v Aaron*, 81 AD3d 876, 877 [2011]). The existence and extent of a duty is a question of law (see *Espinal v Melville Snow Contrs.*, 98 NY2d 136, 138 [2002]; *Tagle v Jakob*, 97 NY2d 165, 168 [2001]; *Palka v Servicemaster Mgt. Servs. Corp.*, 83 NY2d at 585; *Quinlan v Cecchini*, 41 NY2d 686, 689 [1977]; *Utkan v Szuwala*, 60 AD3d 755, 756 [2009]; *cf. Donohue v Copiague Union Free School Dist.*, 64 AD2d 29, 33 [1978], *affd* 47 NY2d 440 [1979]).

> "Although a jury determines whether and to what extent a particular duty was breached, it is for the court first to determine whether any duty exists, taking into consideration the reasonable expectations of the parties and society generally. The scope of any such duty of care varies with the foreseeability of the possible harm" (*Tagle v Jakob*, 97 NY2d at 168; *see Rivera v Nelson Realty, LLC*, 7 NY3d 530, 534 [2006]).

Determining the existence and scope of a duty "requir[es] courts to balance sometimes competing public policy considerations" (*Espinal v Melville Snow Contrs.*, 98 NY2d at 138; *see Chapman v Silber*, 97 NY2d 9, 20-21 [2001]). As the Court of Appeals explained in *Peralta v Henriquez* (100 NY2d 139 [2003]):

> "Courts have long fixed the duty point by balancing factors, 'including the reasonable expectations of parties and society generally, the proliferation of claims, the likelihood of unlimited or insurer-like liability, disproportionate risk and reparation allocation, and public policies affecting the expansion or limitation of new channels of liability' (*Palka v Servicemaster Mgt. Servs. Corp.*, 83 NY2d 579, 586 [1994]). Moreover, courts must be mindful of the future effects their ruling will have and must 'limit the legal consequences of wrongs to a controllable degree' (*Tobin v Grossman*, 24 NY2d 609, 619 [1969])" (100 NY2d at 144-145).

A landowner's duty may arise under the common law, by statute, or by regulation (*see Chapman v Silber*, 97 NY2d at 19; *Guzman v Haven Plaza Hous. Dev. Fund Co.*, 69 NY2d 559, 566 [1987]), or it may be assumed by agreement or by a course of conduct (*see Ritto v Goldberg*, 27 NY2d 887, 889 [1970]; *Dimas v 160 Water St. Assoc.*, 191 AD2d 290 [1993]; *Del Giacco v Noteworthy Co.*, 175 AD2d 516, 518 [1991]). In the case before us, the plaintiff's pleadings rely entirely on the common law in claiming that CAG breached a duty to her. Therefore, we must determine if CAG owed a duty to the plaintiff and, if so, the scope of that duty.

Under New York common law, as significantly modified in *Basso v Miller* (40 NY2d 233 [1976]; *see also Peralta v Henriquez*, 100 NY2d at 143-144), a landowner "has a duty to maintain his or her premises in a reasonably safe condition" (*Walsh v Super Value, Inc.*, 76 AD3d 371, 375 [2010]), taking into account all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk (*see Galindo v Town of Clarkstown*, 2 NY3d 633, 636 [2004]; *Peralta v Henriquez*, 100 NY2d at 144; *Tagle v Jakob*, 97 NY2d at 168; *Chapman v Silber*, 97 NY2d at 19; *Kellman v 45 Tiemann Assoc.*, 87 NY2d 871, 872 [1995]; *Basso v*

*Miller*, 40 NY2d at 241).[1] Historically, as explained in *Park W. Mgt. Corp. v Mitchell* (47 NY2d 316, 322 [1979], *cert denied* 444 US 992 [1979]), the law viewed a lease of premises as akin to a sale, and the landlord therefore had, at most, minimal duties to the tenant and others on the premises (*see Juarez v Wavecrest Mgt. Team*, 88 NY2d 628, 643 [1996]; *Campbell v Holding Co.*, 251 NY 446, 448-449 [1929]; *Edwards v New York & Harlem R.R. Co.*, 98 NY 245, 247 [1885]; *Jaffe v Harteau*, 56 NY 398, 401 [1874]; *Williams v Saratoga County Agric. Socy.*, 277 App Div 742, 744 [1951]; *Schick v Fleischhauer*, 26 App Div 210, 211 [1898]; *see generally* Note, *Lessor's Duty to Repair: Tort Liability to Persons Injured on the Premises*, 62 Harv L Rev 669 [1949]; 34 NY Jur, Landlord and Tenant § 455, at 325-326; *cf. Chadis v Grand Union Co.*, 158 AD2d 443, 444 [1990]). By transferring possession and control of the property to a tenant, the landowner also transferred the responsibility for dangerous conditions, at least those arising after the transfer, to the tenant (*see Trustees of Vil. of Canandaigua v Foster*, 156 NY 354, 361 [1898]; *Clancy v Byrne*, 56 NY 129, 133 [1874]). The view that a lease is akin to a sale, and its consequent limitation on a landlord's duty, have eroded slowly, both by statute (*see Juarez v Wavecrest Mgt. Team*, 88 NY2d at 643; *Ramos v 600 W. 183rd St.*, 155 AD2d 333, 334-335 [1989]), and by further development of the common law (*see Chapman v Silber*, 97 NY2d at 19; *Park W. Mgt. Corp. v Mitchell*, 47 NY2d at 323; *cf. Sargent v Ross*, 113 NH 388, 397, 308 A2d 528, 534 [1973]; *see generally* Prosser and Keeton, Torts § 63, at 434-435 [5th ed]; Note, *Lessor's Duty to Repair: Tort Liability to Persons Injured on the Premises*, 62 Harv L Rev 669 [1949]), but it still exists to a significant extent (*see Rivera v Nelson Realty, LLC*, 7 NY3d 530, 534 [2006]; *Star v Berridge*, 77 NY2d 899, 901 [1991]; *Ramos v 600 W. 183rd St.*, 155 AD2d at 334). As the Court of Appeals explained in *Rivera v Nelson Realty, LLC* (7 NY3d 530 [2006]), a landowner's common-law duty to a lessee remains limited, even after *Basso*: "*Basso* did not abrogate the common-law rule that, with some exceptions, a landlord is not liable to a tenant for dangerous conditions on the leased premises, unless a duty to repair the premises is imposed by statute, by regulation or by contract" (*id.* at 534).

---

1. *Basso* abolished the traditional framework of determining the duty owed by a landowner to persons on their land. That framework categorized persons on land as invitees, licensees, or trespassers, with the landowner owing particular duties to each (*see Basso v Miller*, 40 NY2d at 240-241).

The common-law rule, however, rests on the premise that, by transferring possession of the premises to the lessee, the landowner has also surrendered "control" over them. Indeed, the Court of Appeals has stated in numerous cases that "control is the test which measures generally the responsibility in tort of the owner of real property" (*Ritto v Goldberg*, 27 NY2d at 889; *see Butler v Rafferty*, 100 NY2d 265, 270 [2003]; *Roark v Hunting*, 24 NY2d 470, 476 [1969]; *De Clara v Barber S.S. Lines, Inc.*, 309 NY 620, 628 [1956]; *Jennings v Van Schaick*, 108 NY 530, 534-535 [1888]; *see also Notkin v Gristina Vineyards*, 298 AD2d 445 [2002]; *Gelardo v ASMA Realty Corp.*, 137 AD2d 787, 788 [1988]; *Howell v Gagliano*, 52 AD2d 1040, 1040-1041 [1976]). As the common law has evolved, the meaning of "control" has changed, and in many common situations it may no longer be accurate to say that control, as that term is currently used, is a reliable measure of an out-of-possession landlord's duty.

### III

Historically, cases arising under the common law concerning an out-of-possession landlord's "control" generally spoke of two different concepts. The first, which applied in situations where the plaintiff was not actually on the premises when injured, described the ability of the landlord to remedy a dangerous condition (*see Appel v Muller*, 262 NY 278, 283-284 [1933]; *Jennings v Van Schaick*, 108 NY at 534-535). For example, in *Appel v Muller* (262 NY 278 [1933]), the plaintiff was injured when part of a plate glass window fell on him as he was walking on the sidewalk past the defendant's building. A provision in the lease required the tenant to maintain the windows in good condition, but the landlord retained the right to enter the premises "at all reasonable hours" to make repairs (*id.* at 283). No covenant in the lease, however, obligated the landlord to make repairs (*id.*). Nevertheless, the Court of Appeals found the landlord's retention of the right to reenter to make repairs dispositive, holding that this right continued the landlord's original duty: "[t]he landlord . . . had never parted so completely with possession and control that he had disabled himself from performing his duty of care . . . He continued under the duty to keep his building in a safe condition" (*id.* at 283-284; *see Jennings v Van Schaick*,

108 NY at 534-535; *cf. Federal Ins. Co. v Evans Constr. of N.Y. Corp.*, 257 AD2d 508, 509 [1999]).²

The second concept of control, which generally was applied in cases concerning dangerous conditions within the leased portion of premises, referred to the power to exclude people from the premises; an out-of-possession landlord generally did not have that power. This second concept justified the rule that a land-owner had no duty of care with respect to the leased portion of premises (*see Putnam v Stout*, 38 NY2d 607, 613-618 [overruling *Cullings v Goetz*, 256 NY 287 (1931)]; *Appel v Muller*, 262 NY at 281-282). In *Cullings*, the Court of Appeals had held that even a landlord's covenant in a lease to repair premises did not give rise to a duty in tort to people on the premises, reasoning that the landlord lacked the power to exclude them:

> "Liability in tort is an incident to occupation or control. By preponderant opinion, occupation and control are not reserved through an agreement that the landlord will repair. The tenant and no one else may keep visitors away till the danger is abated, or adapt the warning to the need. The landlord has at most a privilege to enter for the doing of the work, and at times not even that if the occupant protests. The power of control necessary to raise the duty . . . implies something more than the right or liability to repair the premises. *It implies the power and the right to admit people to the premises and to exclude people from them*" (*Cullings v Goetz*, 256 NY at 290 [1976] [citations and internal quotations omitted; emphasis added]).

After *Putnam v Stout* (38 NY2d at 617) overruled *Cullings* and the Court of Appeals decided *Basso* four months later, this second concept of control was no longer utilized. Now, control refers to the ability of an out-of-possession landlord to remedy dangerous conditions, and it pertains to conditions on any portion of the leased premises (*see Lesocovich v 180 Madison Ave. Corp.*, 81 NY2d 982 [1993]; *Abdellatif v Khoukaz*, 21 AD3d 1278, 1279 [2005]; *Haner v De Vito*, 152 AD2d 896, 897 [1989]), most commonly in cases where the duty is imposed by statute (*see Guzman v Haven Plaza Hous. Dev. Fund Co.*, 69 NY2d 559 [1987]; *Worth Distribs. v Latham*, 59 NY2d 231, 238 [1983]; *Pel-*

---

**2.** This concept of control also was utilized in situations where the duty was imposed by statute (*see Tkach v Montefiore Hosp.*, 289 NY 387 [1943]; *Weiner v Leroco Realty Corp.*, 279 NY 127 [1938]).

*legrino v Walker Theatre*, 127 AD2d 574 [1987]). Indeed, our colleagues in the First Department utilize the phrase "right to reenter in order to inspect or repair" (*Ross v Betty G. Reader Revocable Trust*, 86 AD3d 419, 420 [2011]) or a similar phraseology (*see Babich v R.G.T. Rest. Corp.*, 75 AD3d 439, 440 [2010]; *Johnson v Urena Serv. Ctr.*, 227 AD2d 325, 326 [1996]; *cf. Helena v 300 Park Ave.*, 306 AD2d 170, 171-172 [2003]), where we continue to use the term "control" (*see Salaices v Gar-Ben Assoc.*, 82 AD3d 740, 741 [2011]).

Thus, at first blush, it would seem reasonable to find that an out-of-possession landlord that retains a broad right of entry to inspect and repair would be deemed to have retained sufficient control over the demised premises to subject it to liability under the common law. There is a lot to recommend such a holding. For example, at least when the dangerous condition arises from a structural condition (*see e.g. Worth Distribs. v Latham*, 59 NY2d 231 [1983]) or a design defect (*see e.g. Guzman v Haven Plaza Hous. Dev. Fund Co.*, 69 NY2d 559 [1987]), the landlord may have the greater incentive to ensure that the condition is remedied, in order to protect its investment. As well, in many instances, the landlord has greater resources than the tenant to deal with expensive repairs. Finally, at least as a lease nears the end of its term, the tenant, whose interest in paying for expensive repairs diminishes, may be less likely to address premises conditions, thereby endangering people on the leased portion of the premises (*cf. Putnam v Stout*, 38 NY2d at 617-618).

But we are not writing on a blank slate. The Court of Appeals has restated several times in recent years the general common-law rule of limited liability for out-of-possession landlords with respect to leased premises; an out-of-possession landlord has a duty imposed by statute or assumed by contract or a course of conduct, and not merely through its "control" as that term is currently used (*see Rivera v Nelson Realty, LLC*, 7 NY3d at 534; *Chapman v Silber*, 97 NY2d at 19-20; *Juarez v Wavecrest Mgt. Team*, 88 NY2d at 642).

## IV

The plaintiff grounds her claim entirely on the common law. The evidence submitted by CAG in support of its motion for summary judgment dismissing the complaint established prima facie that it was an out-of-possession landlord, that the lease placed responsibility for maintenance and repair

squarely on the tenant, CLI, and that CLI, exclusively, endeavored to perform maintenance and repair. Consequently, CAG met its initial burden of establishing that it owed no duty to the plaintiff (*see Panico v Jiffy Lube Intl., Inc.*, 86 AD3d 553 [2011]; *Ross v Betty G. Reader Revocable Trust*, 86 AD3d at 420). In opposition, the plaintiff failed to raise a triable issue of fact (*see Salaices v Gar-Ben Assoc.*, 82 AD3d at 742).

Inasmuch as CAG owed no duty to the plaintiff, we need not address the issue whether CAG had notice of the allegedly dangerous condition.

■ The plaintiff's alternative contention, that CAG is not an out-of-possession landlord because it is the alter ego of the tenant, CLI, is self-defeating. If CAG is the alter ego of CLI, the plaintiff is barred from recovery by the exclusivity provisions of the Workers' Compensation Law (*see* Workers' Compensation Law §§ 11, 29 [6]; *Weiner v City of New York*, 84 AD3d 140, 146 [2011]; *Samuel v Fourth Ave. Assoc., LLC*, 75 AD3d 594, 594-595 [2010]; *Cappella v Suresky at Hatfield Lane, LLC*, 55 AD3d 522, 522-523 [2008]).

Consequently, the Supreme Court should have granted CAG's motion for summary judgment dismissing the complaint.

Accordingly, the order is reversed insofar as appealed from, on the law, and the defendant's motion for summary judgment dismissing the complaint is granted.

SKELOS, J.P., COVELLO and SGROI, JJ., concur.

Ordered that the order is reversed insofar as appealed from, on the law, with costs, and the defendant's motion for summary judgment dismissing the complaint is granted.