Spielman v Glenwyck Dev., LLC (2024 NY Slip Op 05932)

Spielman v Glenwyck Dev., LLC

2024 NY Slip Op 05932

Decided on November 27, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 27, 2024

CV-23-1454
[*1]Margaret Spielman, Appellant,
v
Glenwyck Development, LLC, et al., Respondents.

Calendar Date:October 17, 2024

Before:Garry, P.J., Egan Jr., Aarons, Lynch and Ceresia, JJ.

Harding Mazzotti, LLP, Albany (Peter P. Balouskas of counsel), for appellant.
Law Offices of M. Randolph Belkin, Latham (M. Randolph Belkin of counsel), for respondents.

Lynch, J.
Appeal from an order of the Supreme Court (Michael R. Cuevas, J.), entered July 17, 2023 in Schenectady County, which granted defendants' motion for summary judgment dismissing the complaint.
On September 6, 2020, plaintiff was injured exiting her residence at a senior living apartment facility for residents 55 and older, owned and operated by defendants Glenwyck Development, LLC and Summit Senior Living, LLC, respectively. As plaintiff, an octogenarian who uses a walker, was passing through an interior door into a vestibule, the automated door began to close, striking her shoulder and causing her to fall. She thereafter commenced this personal injury action alleging that defendants were negligent in failing to provide safe ingress and egress through the doorway. Following joinder of issue, Supreme Court granted defendants' motion for summary judgment dismissing the complaint. Plaintiff appeals.
We reverse. "An owner of land has a duty under the common law to maintain its premises 'in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk' " (Kellman v 45 Tiemann Assoc., 87 NY2d 871, 872 [1995], quoting Basso v Miller, 40 NY2d 233, 241 [1976]). Such duty includes "providing a safe means of ingress and egress" on residential property (Taylor v Lands End Realty Corp., 93 AD3d 1062, 1063 [3d Dept 2012]; see Peralta v Henriquez, 100 NY2d 139, 143 [2003]). To prevail on their summary judgment motion, defendants were "required to establish, as a matter of law, that [they] maintained the premises in a reasonably safe condition and that [they] neither created nor had actual or constructive notice of the allegedly dangerous condition existing thereon" (Roberts v United Health Servs. Hosps., Inc., 128 AD3d 1210, 1211 [3d Dept 2015]).
To support their motion, defendants principally relied upon the affidavit of Cheyenne Saunders, a licensed engineer who inspected the 200-pound door, identified as a low energy power operated door. Saunders opined that the door was compliant with the applicable building code, which incorporates standards developed by the American National Standards Institute, Inc. in conjunction with the Builders Hardware Manufacturers Association, Inc., identified as ANSI/BHMA A156.19. The door was installed in 2015 and could be activated by pushing a button on the wall, which started a timed opening and closing sequence. In her deposition, plaintiff explained that her daughter pressed the button and that she then followed her daughter through the doorway. Saunders explained that if the door was opened manually the automated operation of the door would not be activated. Saunders concluded that the door operated as intended and was not defective.
That the door may have been compliant with the building code, however, is not dispositive of plaintiff's claim based on common-law negligence principles (see Kellman v 45 Tiermann [*2]Assocs., 87 NY2d at 872; Romero v Waterford N.Y., 168 AD3d 1012, 1013 [2d Dept 2019]; Roberts v United Health Servs. Hosps., Inc., 128 AD3d at 1211). Even accepting that defendants made a prima facie showing that the door was not defective, we conclude that plaintiff raised a material issue of fact as to whether the door was sufficiently safe under the circumstances presented. Plaintiff presented the affidavit of Edward A. Gray, a licensed engineer, who represented that he had "[f]acilities [e]ngineering and [p]roperty [m]anagement career experience with the operation, maintenance and inspection of similar automatic swing door systems." Gray agreed with Saunders that the building code did not require presence sensors on the door, calling instead for time delays and slow door movement. The experts obtained similar measurements with respect to the door's operational time of approximately 20 seconds, during which the door remained fully open for about seven seconds.
Having found certain common ground with Saunders, Gray emphasized that the owner's manual published by the door's manufacturer specified that the doors could be equipped with optional presence sensors that would keep the door from closing while an individual was in the doorway. Pertinent in that regard, the ANSI/BHMA A156.19-2007 standard includes an Appendix which expressly states that it is "not a part of ANSI/BHMA A156.19," i.e.,it is not part of the standard but is provided for guidance purposes. Part A-7 of the Appendix, captioned "Recommended Practices and Other Information," includes the following comment: "In special applications where safety sensors are issued on a low energy door, they should comply with criteria set forth in ANSI A156.10 for the type of sensor selected."[FN1] In Gray's view, "the subject automatic door required a special application with safer alternatives that included the provision of presence sensors." For his part, Saunders maintained that Gray erred in relying on the ANSI/BHMA A156.19-2007 standard because the 2007 version was not incorporated into the New York State Building Codes.
Gray further explained that it was the typical industry standard to inspect automatic doors at residential apartment dwellings on a regular basis and that the owner's manual also recommended regular preventive maintenance inspections of all low energy power operated doors. A maintenance worker employed by Summit Senior Living revealed that regular preventative safety inspections of the automatic doors were not performed, even though there were prior complaints that automatic doors were closing too quickly and repairs were then performed — including a repair on the subject door in 2019. This employee was well aware that some residents utilized walkers and wheelchairs. Gray ultimately opined that defendants "should have recognized that the resident population [of the apartment complex] would include individuals using canes, walker mobility devices and wheelchairs" and that use of [*3]a low energy power door, "without an optional presence sensor," provided "inadequate safety for the population of the subject" premises. He concluded that plaintiff's injury would not have occurred had such sensors been installed.
Given the competing expert affidavits on whether defendants maintained their property in a reasonably safe condition under the circumstances, Supreme Court erred in awarding defendants summary judgment dismissing the complaint (see Schrader v Nichols, 198 AD3d 1153, 1155 [3d Dept 2021]). Context is essential in gauging whether a property owner has maintained its premises in a reasonably safe condition. Here, defendants knew certain residents required walkers or wheelchairs that would impact their ability to navigate through a doorway, that the facility's doors were previously serviced for closing too quickly, and that presence sensors were a readily available option from the manufacturer. Plaintiff also sustained a serious injury to her right leg requiring surgery. Viewing the facts in the light most favorable to plaintiff as the nonmoving party, we find that there are triable issues of fact as to whether the premises were reasonably safe (see Vega v Restani Constr. Corp., 18 NY3d 499, 503 [2012]; Knapp v Golub Corp., 72 AD3d 1260, 1262 [3d Dept 2010]). Any issue of comparative fault on the part of plaintiff and/or her daughter and grandson who were with her at the time of this incident is a question to be resolved by a factfinder (see generally Thomas v North Country Family Health Ctr., Inc., 208 AD3d 962, 964 [4th Dept 2022]).
Garry, P.J., Egan Jr. and Ceresia, JJ., concur.
Aarons, J. (concurring).
I agree with the majority that Supreme Court erred in granting defendants' motion. I write separately because, in my view, defendants failed to carry their initial burden to show that they did not create a dangerous condition, and therefore we need not consider whether plaintiff's proof raises a triable issue of fact (see generally Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]). Initially, although plaintiff and her grandson testified that plaintiff's daughter pressed the control button to open the automatic door that injured plaintiff, plaintiff's daughter could not recall doing so, and added, "I do not think I did." Even defendants' expert noted that deposition testimony by plaintiff, her daughter and her grandson was "equivocal regarding whether the button which activates the low energy power operated door was actually pushed prior to the incident," presenting a threshold factual issue that must be determined at trial.
Further, crediting testimony that plaintiff's daughter pressed the control button — insofar as that view of the evidence favors plaintiff as the nonmovant (see Thomas v Albany Hous. Auth., 216 AD3d 1381, 1381 [3d Dept 2023]) — I agree with the majority that defendants' expert opinion that the automatic door complied with all applicable building codes is not dispositive of plaintiff's common-law negligence [*4]claim (see Roberts v United Health Servs. Hosps., Inc., 128 AD3d 1210, 1211 [3d Dept 2015]). Notably, defendants' expert affirmed that the door had a 20.5-second cycle from when the control button was pressed to open the door to the point in time when the door was fully shut, and the door was fully open for seven seconds of that cycle. That 20.5-second cycle was only five seconds longer than the technical requirements, and the door stayed fully open for only two more seconds than the required five seconds. Given "the totality of the specific facts of [this] case" — for example, that defendants' facility houses individuals like plaintiff who have mobility issues — defendants' proof that the door met or exceeded the minimum technical requirements does not foreclose the possibility that the door constituted an inherently dangerous condition (Catman v Back Water Grille LLC, 225 AD3d 966, 967 [3d Dept 2024] [internal quotation marks and citations omitted]; see Crandall v Wright Wisner Distrib. Corp., 66 AD3d 1515, 1516 [4th Dept 2009]; compare Hyatt v Price Chopper Operating Co., Inc., 90 AD3d 1218, 1219-1220 [3d Dept 2011]). Because defendants did not carry their initial summary judgment burden, our inquiry must end there, and the experts' disagreement over whether defendants should have installed an optional presence sensor on the door is inapposite (see Roberts v United Health Servs. Hosps., Inc., 128 AD3d at 1212; Barley v Robert J. Wilkins, Inc., 122 AD3d 1116, 1119 [3d Dept 2014]).
ORDERED that the order is reversed, on the law, with costs, and defendants' motion for summary judgment denied.

Footnotes

Footnote 1: We take note that ANSI/BHMA A156.10-2005, which applies to "power operated doors for pedestrian use which open automatically when approached by pedestrians," details the requirements for the mandatory use of presence sensors, motion sensors and control mats on such doors.