2 N.Y.3d 633 (2004)
814 N.E.2d 419
781 N.Y.S.2d 249
JACQUELINE GALINDO, Individually and as Administratrix of the Estate of JAVIER GALINDO, Deceased, Appellant,
v.
TOWN OF CLARKSTOWN, Defendant, and C. RICHARD CLARK, Respondent.
Court of Appeals of the State of New York.
Argued March 25, 2004.
Decided May 13, 2004.
*634 Gregory W. Bagen, Brewster, for appellant.
Wilson, Bave, Conboy, Cozza & Couzens, P.C., White Plains (John C. Couzens, Jr. and Robert J. Gironda of counsel), for respondent.
Judges Rosenblatt, Read and R.S. Smith concur with Judge G.B. Smith; Chief Judge Kaye dissents in a separate opinion in which Judges Ciparick and Graffeo concur.

OPINION OF THE COURT
G.B. SMITH, J.
The issue presented here is whether defendant Richard Clark may be held liable for failing to warn the decedent, who was sitting in a parked car on Clark's driveway, of a danger posed by a leaning tree located on neighboring property. We conclude that under the circumstances presented, Clark had no duty to warn.
On June 2, 2000, a severe thunderstorm, accompanied by strong wind gusts, hit the Town of Clarkstown, leaving in its wake several downed trees and power lines. On the evening of June 4th, Clark and his wife surveyed the damage created by the storm and saw that an 80-foot tree, which was located on adjacent property owned by the Town of Clarkstown, was tilted toward their property. Clark went to the base of the tree and observed perforations in the soil. The surface root had begun to *635 separate the dirt, causing porous openings in the soil at the base of the tree. Clark estimated that the tree was tilted about 3.5 degrees. At his deposition, he testified that he was concerned about the possibility that the tree could fall, although he could not discern the path that the tree would take in the event of a fall. Clark thought it possible that the tree could fall onto an adjacent tree located on his property. Under such circumstances, Clark stated, the fallen tree could have rolled onto the road into oncoming traffic or could have fallen onto his house. However, he did not believe the tree posed an immediate threat of falling. In fact, although his wife's car was parked near what he described as "a potential danger radius," he did not move it because he did not think the tree was in danger of falling. He and his wife continued to reside in their house.
The next morning, members of the Town Highway Department were across the street from Clark's house picking up branches and debris from a tree that had fallen as a result of the storm. Clark approached Randall Scott, one of the crew members, and pointed out the tree to Scott, who did not approach the tree to observe the condition of the root or the soil. Instead, he gave Clark the telephone number of Tom Westervelt, a road maintenance supervisor for the Town of Clarkstown. Minutes later, Clark called Westervelt and left a voice mail message conveying that the tree threatened damage either to his property, the road or the power lines. Clark received no response.
On the following morning, June 6th, Clark noticed that the degree of the tilt of the tree had increased. He again called Westervelt, leaving a second, more urgent message. At some point during the morning, plaintiff Jacqueline Galindo, Clark's housekeeper, arrived at the house. After greeting Galindo, Clark left the house to run errands. As he was driving away, he noticed a car that he did not recognize parked behind his wife's car. Inside the car was Galindo's husband, Javier, who apparently had been waiting to pick up his wife after she finished working. However, at that time Clark did not approach the car or see anyone inside. Tragically, while Clark was running his errands, the tree fell onto the parked car, causing Javier's death.
Plaintiff commenced this action against Clark and the Town of Clarkstown seeking damages for the wrongful death of her husband. Both defendants moved for summary judgment. Supreme Court dismissed the complaint as to Clark, concluding that he had no duty to warn of defects or conditions on property *636 that he did not own. After summary judgment was denied to the Town of Clarkstown, it settled the action and plaintiff discontinued her claim against the Town.
Plaintiff appealed the grant of summary judgment in favor of Clark. A divided Appellate Division affirmed the order. Plaintiff appeals to this Court as a matter of right, and we now affirm.
It is well settled that a landowner has a duty to exercise reasonable care in maintaining his own property in a reasonably safe condition under the circumstances. The nature and scope of that duty and the persons to whom it is owed require consideration of the likelihood of injury to another from a dangerous condition on the property, the seriousness of the potential injury, the burden of avoiding the risk and the foreseeability of a potential plaintiff's presence on the property (see Kush v City of Buffalo, 59 NY2d 26, 29-30 [1983]; Basso v Miller, 40 NY2d 233, 241 [1976]). Ordinarily, a landowner's duty to warn of a latent, dangerous condition on his property is a natural counterpart to his duty to maintain his property in a reasonably safe condition (see Tagle v Jakob, 97 NY2d 165, 169 [2001]; Basso v Miller, 40 NY2d at 239; Soich v Farone, 307 AD2d 658, 659 [3d Dept 2003]).
However, as a general matter, an owner owes no duty to warn or to protect others from a defective or dangerous condition on neighboring premises, unless the owner had created or contributed to it (see Gehler v City of New York, 261 AD2d 506 [2d Dept 1999]; Pensabene v Incorporated Village of Valley Stream, 202 AD2d 486 [2d Dept 1994]; Gipson v Veley, 192 AD2d 826 [3d Dept 1993]). The reason for such a rule is obviousa person who lacks ownership or control of property cannot fairly be held accountable for injuries resulting from a hazard on the property. We hold that this rule requires dismissal of plaintiff's claim against Clark.
To be sure, this case presents the unusual situation in which a dangerous condition on neighboring property caused the decedent's death while he was on the defendant's property. Yet the fact remains that because Clark had no ownership or control of the property on which the tree stood, he did not have it within his power to correct the hazard that the tree posed. Indeed, had *637 Clark attempted to remove the tree to eliminate the danger, he could have been subject to criminal charges.[*]
We reject plaintiff's contention that though Clark had no duty to remedy the danger, he did have a duty to warn the decedent of it. We agree with the Appellate Division that as a general matter, it would create an "unreasonably onerous" burden to require a landowner to evaluate and warn others about a danger caused by a condition existing on neighboring land. (305 AD2d 538, 539 [2003].) We do not exclude the possibility that some dangers from neighboring property might be so clearly known to the landowner, though not open or obvious to others, that a duty to warn would arise. Here, there was no such danger.
Though Clark was clearly aware of the leaning tree and concerned that it might one day damage his property, he had no reason to, and did not, anticipate that the tree would fall either where or when it did. Clark testified that the leaning of the tree was fractional, approximately 3.5 degrees the day before the accident and a little more the day that it fell. Of course, Clark was not an arborist and from such a tilt could not be expected to predict that the tree was about to fall, and if so, how it would fall. Even when he brought the tree to the attention of Scott, who had been removing foliage from the street on behalf of the Town, Scott showed little concern for the well-being of the tree or for the potential damage it could cause, but simply gave Clark a phone number to call. During his deposition, Clark testified that it was difficult to know the path the tree would take. He opined that it could have fallen onto an adjacent tree located on his property; it could have rolled into the street, taking out power lines and blocking traffic; or it could have fallen onto his house.
Clark did not consider the situation so precarious as to warrant taking precautions for himself or for his wifethough Clark testified that his wife's car was parked "on the edge of a potential danger radius." He did not move the car, and he continued to stay in his home with his wife after he had noted *638 the possibility that the tree would fall on his property. Under these circumstances, it is apparent that there was no obvious hazard that could give rise to a duty to warn.
In sum, we conclude that Clark had no duty under the facts of this case to warn decedent of the hazard the tree posed.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge KAYE (dissenting).
We are unanimous in two respectsone procedural, one substantive. Procedurally, this is a summary judgment motion, where we need determine only whether triable issues of fact exist permitting the case to proceed to trial. Substantively, we all agree on the governing legal standard: A landowner owes a duty to prevent foreseeable injuries by exercising reasonable care in maintaining his or her property in a safe condition under all of the circumstances, including the likelihood of injury to others, the seriousness of the potential injuries, the burden of avoiding the risk and the foreseeability of a potential plaintiff's presence on the property (see Basso v Miller, 40 NY2d 233, 241 [1976]). This duty includes a duty to warn of potentially dangerous conditions on the property, unless such conditions are open and obvious.
In granting defendant summary judgment, however, the Court now concludes as a matter of law that the duty to warn a visitor of a known danger exists when the source of the danger arises on one's own property, but not when it originates inches over the property line. I cannot join in this rule.
To my mind, what matters is not the source of the danger but the locus of the risk of injuryhere plainly situated on defendant's property, as defendant acknowledges he knew. Defendant admitted that
 he reported to the Clarkstown Highway Department that the tree "looked to me to be threatening to do some damage to, A, either my property or the road or power lines"; and
 he placed a second phone call with "a little more urgency because I felt the tree had gotten worse"; and
 the tree "looked to me to be a problem, a serious problem" and appeared "wounded enough to cause concern about its ultimate fate"; and
*639  "[i]t looked like there was a possibility it would come down."
Defendant further testified that he informed the Highway Department that the tree might present a hazard to his house and that in order for the tree to fall and strike his house, "[i]t would have fallen straight down the line of the driveway." (Emphasis added.) In fact, the tree that crushed Mr. Galindo to death did indeed fall straight down the line of the driveway and, as anticipated, did strike defendant's house. These admissions made throughout defendant's testimony certainly created triable issues of fact as to his knowledge of the danger and the foreseeability of the harm.
As the Appellate Division dissent explained, "It makes no difference that the instrument of injury or death is located on adjacent property if the consequence of its fall is injury or death occurring on the owner's property" (305 AD2d 538, 540 [2003]).
True, an abutting property owner generally owes no duty to warn or protect third parties from a dangerous or defective condition on neighboring premises, unless the owner created or contributed to the dangerous condition. But what the Court fails to recognize is that the hazard here was not on neighboring premises. The uprooted tree posed a threat toand caused a death indefendant's own driveway.
True, defendant had neither the duty nor the right to remove the tree or otherwise eliminate the danger. But that is irrelevant to the issue whether defendant had a duty simply to warn of a danger that he could nevertheless not himself repair. That being so, there is no principled reason why a property owner aware of the risk should owe a duty to warn a visitor that a branch dangling from a tree on his property is about to fall on the visitor's head, but may stand quietly by when its roots grow in the neighbor's soil. A landowner must "act reasonably when considering all the circumstances" (Peralta v Henriquez, 100 NY2d 139, 144 [2003]) and the standard of care should "accord[] with the mores of our society" (Gallagher v St. Raymond's R.C. Church, 21 NY2d 554, 558 [1968]). If a live power line were dangling precariously over a person's property, any homeownerthough unable to eliminate the danger other than by calling the local utility who owns the linewould warn children to stay away. If the danger were not open and obviousperhaps at nightthe owner should warn visitors as well.
The rule should remain what it has always been: A landowner has a duty to warn of a known hazard on his or her premisesregardless of the ultimate source of the danger. Permitting a trial in these circumstances imposes no duty on landowners to *640 inspect neighboring premises or to learn of hidden dangers. Only when the property owner actually knows of the danger emanating from the abutting propertya danger that poses a risk of injury on the owner's own propertyshould there be a duty to warn. Recognizing such a duty imposes a minimal burden on landowners but its fulfillment here could have saved a life.
The Court's contention that the harm was not foreseeable does not resolve the issue before us, because that conclusion applies with equal force on whichever side of the property line the tree was located. The answer to the question whether defendant could tell by the tilt of this tree where it would fall is precisely the same regardless of where defendant's property ended and his neighbor's began. If defendant had owned both properties, we would not debate whether he had a duty to warn. Since the record supports the conclusion that he knew of the risk, the result should be no different here.
In concluding instead that the risk of injury was not foreseeable as a matter of law because this defendant did not take steps to protect himself and his family from danger, the Court misapprehends the law of negligence. The test is not whether defendant stayed at home or moved his wife's car. The test is an objective one: what a reasonable person would do under the circumstances. That defendant may have negligently, perhaps recklessly, remained in a house he believedcorrectly, as it turned outpotentially in danger did not render the risk of injury unforeseeable as a matter of law. Nor could his failure to determine whether anyone was in Galindo's car at the moment he left his house absolve him of the duty to warn the car's owner of the risk posed to her propertyor to herself if she got in the car to drive it, as car owners are wont to do.
Whether the tree in fact posed a danger, whether the risk that it would fall on the driveway was foreseeable, whether defendant took reasonable care to warn, whether the danger was open and obviousall these are questions to be determined at trial. "[T]he question of proof in individual situations should not be the arbitrary basis upon which to bar all actions" (Bovsun v Sanperi, 61 NY2d 219, 231 [1984] [citation and internal quotation marks omitted]).
Order affirmed, with costs.
NOTES
[*] Section 5-11 of the Code of the Town of Clarkstown states, "No person. . . shall do or cause to be done any damage nor shall . . . destroy any grass, shrub or tree upon town highways, town parks or other town property." Section 5-17 of the Code states, "Any person committing an offense against the provisions of §§ 5-7 through 5-16, inclusive, of this chapter shall be guilty of a violation punishable by a fine not exceeding two hundred fifty dollars ($250) or by imprisonment for a term not exceeding fifteen (15) days, or by both such fine and imprisonment."