[880 NE2d 416, 849 NYS2d 872]

JOAN HAYMON, Individually and as Mother and Natural Guardian of L.H., an Infant, Appellant, v DONALD J. PETTIT et al., Defendants, and AUBURN COMMUNITY NON-PROFIT BASEBALL ASSOCIATION, INC., Respondent.

Argued October 18, 2007; decided November 20, 2007

## POINTS OF COUNSEL

*Damon & Morey LLP,* Buffalo (*Michael J. Willett* and *Steven M. Zweig* of counsel), for appellant. I. Auburn Community Non-Profit Baseball Association, Inc. owed a duty to the infant plaintiff to protect him from the dangerous condition it created by the manner in which it operated the stadium. (*Weitzmann v Barber Asphalt Co.,* 190 NY 452; *Gayden v City of Rochester,* 148 AD2d 975; *Dunbar v NMM Glens Falls Assoc.,* 263 AD2d 865; *Leone v City of Utica,* 66 AD2d 463, 49 NY2d 811; *Vestal v County of Suffolk,* 7 AD3d 613; *Jones v Kane & Roach, Inc.,* 182 Misc 37; *Gellman v Seawane Golf & Country Club, Inc.,* 24 AD3d 415; *Varga v Parker,* 136 AD2d 932; *Boehm v Barnaba,* 7 AD3d 911; *Clifford v Woodlawn Volunteer Fire Co., Inc.,* 31 AD3d 1102.) II. Auburn Community Non-Profit Baseball Association, Inc. had a duty to provide an adequate degree of supervision over its promotion. (*Caldwell v Village of Is. Park,* 304 NY 268; *Noeller v County of Erie,* 145 AD2d 919; *Curcio v City of New York,* 275 NY 20; *Genrich v Guary,* 298 AD2d 919; *Morbillo v Board of Educ. of Mt. Sinai School Dist.,* 269 AD2d 506; *Joslyn v Village of Sylvan Beach,* 256 AD2d 1166; *Collentine v City of New York,* 279 NY 119; *Fritz v City of Buffalo,* 277 NY 710; *Nunez v Recreation Rooms & Settlement,* 229 AD2d 359; *Bongiorno v Wechter Fuel Oil Co.,* 30 AD2d 858, 26 NY2d 950.) III. Auburn Community Non-Profit Baseball Association, Inc. failed to meet its burden of establishing that its conduct was not a proximate cause of the accident. (*Mason v U.E.S.S. Leasing Corp.,* 96 NY2d 875; *Gordon v Eastern Ry. Supply,* 82 NY2d 555; *Rotz v City of New York,* 143 AD2d 301; *Derdiarian v Felix Contr. Corp.,* 51 NY2d 308; *Fuller v Marcello,* 17 AD3d 1017; *Townsley v State of New York,* 6 Misc 2d 557; *Cruz v City of New York,* 218 AD2d 546; *Williams v Tennien,* 294 AD2d 841;

*McMorrow v Trimper,* 149 AD2d 971, 74 NY2d 830; *Alami v Volkswagen of Am.,* 97 NY2d 281.)

*Roemer Wallens & Mineaux, LLP,* Albany (*Matthew J. Kelly* and *Amanda Davis Twinam* of counsel), for respondent. I. Auburn Community Non-Profit Baseball Association, Inc. did not owe plaintiff infant a duty of care. (*Hamilton v Beretta U.S.A. Corp.,* 96 NY2d 222; *Lauer v City of New York,* 95 NY2d 95; *Pulka v Edelman,* 40 NY2d 781; *Palka v Servicemaster Mgt. Servs. Corp.,* 83 NY2d 579; *Tobin v Grossman,* 24 NY2d 609; *Johnson v Jamaica Hosp.,* 62 NY2d 523; *Maheshwari v City of New York,* 2 NY3d 288; *Akins v Glens Falls City School Dist.,* 53 NY2d 325; *D'Amico v Christie,* 71 NY2d 76; *Purdy v Public Adm'r of County of Westchester,* 72 NY2d 1.) II. Auburn Community Non-Profit Baseball Association, Inc.'s alleged negligence was not a proximate cause of plaintiff infant's injuries. (*Maheshwari v City of New York,* 2 NY3d 288; *Derdiarian v Felix Contr. Corp.,* 51 NY2d 308; *Katz v Klagsbrun,* 299 AD2d 317; *Santodonato v Clear Channel Broadcasting, Inc.,* 26 AD3d 543; *Di Ponzio v Riordan,* 89 NY2d 578; *Campbell v Central N.Y. Regional Transp. Auth.,* 7 NY3d 819; *Boltax v Joy Day Camp,* 67 NY2d 617; *Creamer v Snediker,* 274 AD2d 492; *Miecznikowski v Robida,* 278 AD2d 793; *Alami v Volkswagen of Am.,* 97 NY2d 281.)

**OPINION OF THE COURT**

JONES, J.

In this appeal we are asked to decide whether a baseball park operator owes a duty to warn or protect nonpatron spectators who are injured while chasing foul balls that are hit out of the stadium. Under the circumstances presented, we conclude that no duty exists.

Plaintiff's then 14-year-old son, L.H., was injured when he was struck by an automobile driven by defendant, Donald Pettit. Specifically, L.H. chased a foul ball into traffic. The record indicates that he was wearing headphones while chasing the ball and failed to look both ways before crossing the street. L.H. apparently neither saw nor heard the oncoming vehicle. Pettit was operating his vehicle with a blood alcohol level of .11%. At the time, L.H. had congregated with friends outside of Falcon Park, a baseball stadium owned by the City of Auburn and operated by defendant Auburn Community Non-Profit Baseball Association, Inc. (Ball Club). Adjoining the stadium on the third base side is a two-way public street across from which is a park-

ing lot owned by the City of Auburn and utilized by fans during games. At the time of the incident, the Ball Club offered free baseball tickets to nonpatrons outside of the park who retrieved foul balls and returned them to the ticket window. Further, the record indicates that L.H. visited the stadium regularly to retrieve and collect foul balls hit out of the stadium.*

L.H.'s mother commenced this negligence action individually and on L.H.'s behalf against defendants Ball Club, Donald Pettit and the City of Auburn, among others. The Ball Club moved for summary judgment dismissing the complaint on the ground that it owed no duty to plaintiff's son. Supreme Court denied the motion, finding that the Ball Club owed a duty to its fans outside the stadium "to prevent them from chasing foul balls into the nearby public street, a foreseeably dangerous condition it took part in creating." The Appellate Division reversed and dismissed the complaint as to the Ball Club. The court determined that the Ball Club, "as an adjoining landowner [of a public street], owed no legal duty to plaintiff's son under the circumstances" despite the foreseeability that someone might run into the street to chase a foul ball (*Haymon v Pettit*, 37 AD3d 1194, 1195 [4th Dept 2007]). Two Justices dissented and voted to affirm on the ground that a duty existed due to the Ball Club's foul ball promotion, which "played a significant role in creating the danger" (*id.*).

Plaintiff argues that the Ball Club's foul ball promotion gave rise to a duty to warn or protect its participants. Specifically, plaintiff posits that a duty arose under these circumstances because the Ball Club provided an incentive to fans outside of the stadium to retrieve errant foul balls—namely, the prospect of free tickets. In short, plaintiff argues that the foreseeability of children chasing balls into the street, coupled with defendant's incentive for them to do so, required the Ball Club to provide some measure of protection or warning. We disagree.

---

* There is scant evidence in the record on this motion for summary judgment indicating whether or not L.H. even engaged in this activity for the purpose of receiving free tickets pursuant to the Ball Club's promotion. L.H.'s sister testified that he left the house to go to the stadium, that he had money but "didn't want to spend it," and that he did not have a ticket but that "he had his glove with him" to try "to catch [a foul] ball." The sister added that L.H. "saved baseballs." Even viewing the evidence in a light most favorable to the nonmoving party and giving the nonmoving party the benefit of all reasonable inferences which can be drawn from the evidence (*see Fundamental Portfolio Advisors, Inc. v Tocqueville Asset Mgt., L.P.*, 7 NY3d 96 [2006]), it is unclear whether plaintiff has succeeded in raising an issue of fact. Nevertheless, this becomes academic in light of our holding.

An owner or occupier of land generally owes no duty to warn or protect others from a dangerous condition on adjacent property unless the owner created or contributed to such a condition (*see Galindo v Town of Clarkstown*, 2 NY3d 633, 636 [2004]). "The reason for such a rule is obvious—a person who lacks ownership or control of property cannot fairly be held accountable for injuries resulting from a hazard" on neighboring property (*id.*). Thus, in fixing the duty point, our analysis is tempered by considerations such as "the reasonable expectations of parties and society generally, the proliferation of claims, the likelihood of unlimited or insurer-like liability, disproportionate risk and reparation allocation" (*Hamilton v Beretta U.S.A. Corp.*, 96 NY2d 222, 232 [2001]; *see also Darby v Compagnie Natl. Air France*, 96 NY2d 343, 347 [2001] [duty must "comport with what is socially, culturally and economically acceptable"]).

In *Akins v Glens Falls City School Dist.* (53 NY2d 325 [1981]) we limited the duty of a baseball field owner/operator to provide screening for errant baseballs around "the most dangerous section of the field—the area behind home plate—and the screening that is provided must be sufficient for those spectators who may be reasonably anticipated to desire protected seats on an ordinary occasion" (*id.* at 330; *see also Davidoff v Metropolitan Baseball Club*, 61 NY2d 996, 997-998 [1984]). Although in *Akins* the injury occurred inside the baseball park, it is instructive nonetheless. *Akins* is premised on "the practical realities" (*id.* at 331) of the game—namely, that errant balls of any sort are an inherent part of the sport and that a baseball stadium owner/ operator "is not an insurer of the safety of its spectators" and can only be held to exercise reasonable care under the circumstances (*id.* at 329). Even inside the park, screening of the area behind home plate offers the most protection spectators could reasonably expect. The nature of the game—and the spectators' involvement in it—is such that absolute protection around the entire stadium would be impractical. Any other formulation would defy a reasonable point at which duty can be fixed (*see Darby*, 96 NY2d at 349-350; *Pulka v Edelman*, 40 NY2d 781, 786 [1976]).

The same considerations govern this case. Here, plaintiff's theory rests upon defendant's "foul ball return for tickets" promotion. Plaintiff insists that this incentive foreseeably exposed fans—mostly children—to the hazard of chasing foul balls into the street. This argument, however, is one of foreseeability presupposing that a duty exists (*see Hamilton*, 96 NY2d at 232).

The dangers of crossing the street—and individuals electing to cross it in pursuit of foul balls—exist independent of the Ball Club's promotion. This, coupled with the fact that the Ball Club could control neither the public street nor third persons who use it, strongly militates against a finding of duty.

*Darby* is also instructive. In that case, an individual drowned while swimming on a public beach in Brazil. He was a guest at a hotel which was separated from the beach by a four-lane public highway. The hotel actively encouraged guests to use the beach, and even provided them with umbrellas, towels and a security escort service. The hotel did not, however, warn beachgoers about dangerous surf conditions. Plaintiff sued the hotel on behalf of decedent alleging that it was negligent in failing to warn beachgoers of dangerous surf conditions. Concluding that no duty existed, we were unpersuaded by the fact that the hotel *encouraged and facilitated* use of the beach by providing certain related services, and we held that merely "[p]roviding these services . . . does not make the hotel the insurer of its guests' safety at a locale over which it ha[d] no control" (*Darby*, 96 NY2d at 349). Here, the Ball Club's promotion did no more to contribute to an inherent risk than did the Meridien Copacabana Hotel in *Darby*.

The Court is mindful that, in this case—unlike *Darby*—the Ball Club rewarded participants of its promotion with tickets. Important to our resolution, however, is that under the circumstances of this case, like *Darby*, there are inherent risks associated with crossing the street. Those risks are multiplied when doing so indiscriminately. Moreover, we do not view the Ball Club's promotion as contributing to a dangerous condition, for it only rewarded the *retrieval* of foul balls. We must assume that adults, and children of L.H.'s age, will act prudently in doing so.

Even assuming that mere encouragement of retrieving foul balls suffices, under the circumstances, to create—or contribute to—a dangerous condition (*cf. Griffin v 19-20 Indus. City Assoc., LLC*, 37 AD3d 412 [2d Dept 2007]), a finding of duty would still be inappropriate. As in *Akins*, "the practical realities" of the game are not lost on the fact that players hit balls outside of the park. Foul balls can land on virtually any square foot of property surrounding a stadium, and imposition of a duty to warn or protect under such circumstances is neither fair nor practical (*see Akins*, 53 NY2d at 330; *see also Starke v Town of Smithtown*, 155 AD2d 526, 527 [2d Dept 1989]; *Clark v Goshen Sunday Morning Softball League*, 122 AD2d 769, 770 [2d Dept

1986]). Injury may befall someone—as in this case—as a result of conduct of a third person on a public road, or a group of fans in a struggle for the ball. The possibilities for injury—and consequently, for liability—are limitless, and the expectation that the stadium control the conduct of third persons is unrealistic (*see Pulka,* 40 NY2d at 785 [unreasonable to impose duty to protect from the negligent conduct of another "where the realities of every day experience show us that, regardless of the measures taken, there is little expectation that the one made responsible could prevent the negligent conduct"]).

Under these circumstances, it is difficult to imagine what steps the stadium operator could have taken that would have sufficed to meet a duty. Thus, we are constrained from imposing a requirement that the stadium exercise control over nonpatron, third persons outside its premises over whom it has no actual authority to do so.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

Chief Judge KAYE and Judges CIPARICK, GRAFFEO, READ, SMITH and PIGOTT concur.

Order affirmed, with costs.