08-4642-cv
Guest v. Hansen

# UNITED STATES COURT OF APPEALS

## FOR THE SECOND CIRCUIT

----

August Term, 2009

(Argued:    Aug. 5, 2009                    Decided:    April 20, 2010)

Docket No. 08-4642-cv

----

STEPHEN M. GUEST, as Administrator of the Estate of KRISTINE B. GUEST, Deceased,

*Plaintiff-Appellant*,

-v.-

MICHAEL F. HANSEN, ESTATE OF JOSHUA L. RAU,

*Defendants-Cross-Defendants-Cross-Claimants-Appellees*,

PAUL SMITH'S COLLEGE OF ARTS AND SCIENCES, TONI A. MARRA,

*Defendants-Cross-Claimants-Cross-Defendants-Appellees*.

----

Before: CALABRESI, PARKER, and RAGGI, *Circuit Judges*.

Appeal from a judgment of the United States District Court for the Northern District of New York (Sharpe, *Judge*), granting summary judgment in favor of Defendants. Plaintiff, administrator and sole beneficiary of the estate of his deceased daughter, appeared *pro se* to appeal the judgment below. We hold that an administrator may represent an estate *pro se*, so long as the estate has no other beneficiaries. We conclude that summary judgment was properly granted.

STEPHEN M. GUEST, *pro* se, West Hartford, Conn., *for Appellant*.

BRIAN BREEDLOVE (Carrie McLoughlin Noll, *on the brief*), Pennock, Breedlove & Noll, LLP, Clifton Park, N.Y., *for Appellees*.

CALABRESI, *Circuit Judge*:

This case concerns the tragic accident that took the lives of Kristine Guest and Joshua Rau on February 6, 2005. Kristine's[1] father, Stephen Guest, acting as administrator of Kristine's estate, sued Paul Smith's College of Arts and Sciences ("Paul Smith" or "the College") and Paul Smith employee Toni Marra (collectively, "Defendants") for their allegedly negligent conduct prior to Kristine's death.[2] The District Court for the Northern District of New York (Sharpe, *Judge*) granted summary judgment to Defendants, finding that they had no legally cognizable duty to Kristine. *See Guest v. Hansen*, No. 06-cv-0500, 2007 U.S. Dist. LEXIS 92780, at *23 (N.D.N.Y. Dec. 18, 2007). Mr. Guest, who was represented by counsel in the District Court, appealed *pro se*.

This case presents a question that has not previously been resolved in our circuit: whether the administrator of an estate may represent the estate *pro se*, where the administrator is the estate's sole beneficiary. We expressly left this question open in *Pridgen v. Andresen*, 113 F.3d 391, 393 (2d Cir. 1997). We now hold that an administrator can proceed *pro se* where an estate has neither creditors nor beneficiaries other than the administrator. This allows us to consider the merits of Mr. Guest's appeal.

As to those substantive merits, we conclude that New York tort law does not provide a cause of action in circumstances such as these. Accordingly, we affirm the District Court's grant

---

[1] Because we refer to three individual members of the Guest family in this opinion, we will refer to Kristine Guest by her first name, for clarity's sake, and to her parents, Stephen and Ellen Guest, as, respectively, Mr. and Mrs. Guest.

[2] Plaintiff settled or discontinued his claims against two other defendants.

of summary judgment to Defendants.

**I.    Background**

*A.    Factual Background*

Because this case comes to us on appeal of a grant of summary judgment to Defendants, we view the facts in the light most favorable to Mr. Guest, and recount them accordingly. *See Pyke v. Cuomo*, 567 F.3d 74, 76 (2d Cir. 2009).

1.    The Relationship Between the College and the Lake

Paul Smith is a college located on the northern shore of Lower St. Regis Lake ("the lake") in Adirondack Park. The College owns over 14,000 acres of property, much of it forest. The campus itself is on the edge of the lake, 12 miles from the nearest town; several of the College's buildings, including some of its dormitories, are steps from the lake. Although the College owns much of the land around the lake, it does not own the lake itself, which is state property. The College's promotional materials cite the lake and the surrounding, College-owned forest as one of the College's principal attractions.

Paul Smith students occasionally built bonfires and consumed alcohol on the lake once it froze over, viewing it as a place where "Paul Smith[']s College had no jurisdiction." Pl.'s App. 98. College safety officers sometimes intervened on the lake, breaking up parties and stopping dangerous behavior. On some occasions, they called the State Police; on others, they did not.

2.    Events on Campus the Weekend of February 4-6, 2005

On Friday night and early Saturday morning, February 4-5, 2005, Paul Smith students held a bonfire party on the lake, which was visible and audible from campus. Defendant Toni Marra, Paul Smith's Director of Residence Life, and campus safety officer Jamie Shova

3

observed "[a] large fire, yelling and screaming," and contacted the State Police. Pl.'s. App. 140. A little later, Shova saw a truck "doing donuts" (driving quickly in a tight circle) on the ice of the lake. By the time the State Police arrived, the party had dispersed; a trooper told campus security to call the State Police immediately if they "observed any unsafe or illegal behavior." Pl.'s App. 58. Shova later saw the same truck and confronted the driver, who acknowledged having drunk eight to ten beers. Although Marra confiscated the driver's keys, she instructed Shova not to call the State Police.

The following night, the night of February 5, students again threw a party centered around a bonfire on the lake, located about 50 to 75 yards from the shore and in view of the main campus and of various dormitories. The fire was built with wood that students brought from the College's forestry cabin. Because of the cold temperature, students would frequently return to the dormitories to warm up, before heading back onto the lake. The party was apparently a raucous affair, with beer freely available to the crowd of students, both of legal drinking age and below. By one estimate, the party at its peak had between eighty and one hundred students present, and there were as many as twenty snowmobiles driving around the lake.

Shortly before midnight, a snowmobile carrying two students crashed into a tree; the students were unharmed. A little while later, Campus Safety received a report of the snowmobile crash. Although they were informed that there were no injuries, Marra and Shova went to the lake around 12:45 a.m. Shova believed that the party was "getting out of control," but Marra instructed him not to attempt to shut it down or take any disciplinary actions "as it would cause a riot." Pl.'s App. 60, 85. Instead, the two stayed at the party for about fifteen minutes, then "advised the students to be safe, keep the speed down, and call [Campus Safety] if

4

there was [sic] any problems." Pl.'s App. 60.

3.        Kristine Guest's and Joshua Rau's Activities on February 5-6

Kristine was, at the time of her death, a 20-year-old student at Quinnipiac University in Hamden, Connecticut. On February 5, Kristine and three friends drove to Paul Smith to visit Rau, a Paul Smith student, to celebrate his twentieth birthday. The group went to the town of Saranac Lake for dinner, then returned to Rau's dorm room at 8 or 9 p.m., where they began playing a drinking game. Around 10 p.m., the group went out to the lake, which was about fifteen steps from Rau's dormitory. The bonfire party had already been going on for four or five hours at that point. Kristine and Rau went back and forth from Rau's dorm room to the bonfire party repeatedly over the next several hours. Like many other students, the group Kristine and Rau were with brought alcohol with them on their trips from campus to the lake and back.

Kristine and her friends returned to Rau's dorm room around 3:30 a.m. They had, by then, apparently stopped drinking alcohol. Around 4:30 a.m., they headed back out to the lake, hoping, in due course, to watch the sunrise. A heavy fog that had lain over the lake much of the night had begun to lift, and Rau's friend Christopher Hansen agreed to let Rau drive his snowmobile around the lake. There were approximately four other snowmobiles still riding around the lake. Rau gave rides to Kristine's two out-of-town friends, without incident. But then Rau drove out further onto the lake with Kristine. Neither was wearing helmets. The two crashed into a promontory at a peninsula called Peter's Rock, a piece of land owned by the College. The snowmobile and its passengers left the ground, crashing into trees and a lean-to on Peter's Rock. Kristine and Rau were killed.

B.        *Procedural Background*

### 1. Proceedings in the District Court

Stephen Guest, Kristine's father, was appointed administrator of her estate after her death. Represented by counsel, he filed suit against Marra and the College, alleging that they acted negligently by, among other things, failing to intervene in the bonfire party and insufficiently enforcing the College's policy against underage drinking.

Defendants moved for summary judgment, arguing principally (1) that they did not have any duty to supervise or control Kristine's activities, and (2) that they are entitled to immunity from liability for snowmobiling injuries such as these, pursuant to New York General Obligations Law § 9-103.[3]

On December 18, 2007, the District Court granted Defendants' motion for summary judgment in its entirety. Principally, the District Court found that Defendants owed Kristine no duty of care. First, it noted that New York courts had rejected the doctrine of *in loco parentis*, and hence colleges had no general duty to supervise or control their students' conduct "so as to prevent them from harming others, even where as a practical matter defendant can exercise such control." *Guest*, No. 06-cv-0500, 2007 U.S. Dist. LEXIS 92780, at *14 (internal quotation marks omitted) (quoting *D'Amico v. Christie*, 71 N.Y.2d 76, 88 (1987)). Nor did Marra or the College assume a duty when Marra went out to the lake, because her doing so did not "place [Kristine] in a more vulnerable position than she otherwise would have been in." *Id.* at *15.

The Court next considered New York's law of premises liability, noting that landowners

---

[3] Defendants also argued that Kristine assumed the risk of injury and that her actions were a superseding cause barring liability. The District Court's opinion did not mention this line of argument in entering the challenged summary judgment, and Defendants do not argue the point in defense of that judgment on appeal. Accordingly, it warrants no further discussion.

have a duty to control intoxicated guests only on their own property, and are not generally liable for their actions once they leave the landowner's property. The fact that Rau and Kristine did return to College property at the moment of their deaths, when they crashed at Peter's Rock, was immaterial, the Court found: Plaintiff did not allege that Peter's Rock was itself hazardous, and the College had no opportunity to supervise or control Rau in those fatal seconds when he was on the College's property.

For these reasons, the District Court granted Defendants' motion and dismissed the suit.

2. Proceedings at the Appellate Level

Plaintiff timely appealed. Although Mr. Guest was represented by counsel at the District Court, on appeal he appears *pro se*. At oral argument, the Court pointed out that "an administr[ator] or execut[or] of an estate may not proceed *pro se* when the estate has beneficiaries or creditors other than the litigant." *Pridgen*, 113 F.3d at 393. Because Mr. Guest's wife, Ellen Guest, was also a beneficiary of Kristine's estate, we expressed doubt as to whether a suit by a *pro se* administrator was permitted under *Pridgen*. While decision was pending, however, Plaintiff filed a letter brief providing evidence that Mrs. Guest was disclaiming all interest in Kristine's estate, leaving Mr. Guest as the sole beneficiary. Subsequently, upon the Court's post-argument inquiry, he filed an additional brief stating that the estate had no creditors.

On the merits, Plaintiff argues that the District Court erred in finding that Defendants owed Kristine no duty of care. Under New York law, Plaintiff claims, "duty extends to foreseeable danger on a neighboring property when one creates or contributes to the danger existing on the neighboring property." Appellant's Br. 4. Given the interrelationship between

7

events on campus and events on the lake, Plaintiff argues, a material question of fact was alleged as to whether the College did in fact create or contribute to the dangerous conditions on the lake.

**II.     Analysis**

*A.     Standard of Review*

This Court reviews a District Court's grant of summary judgment *de novo*. *New York v. Nat'l Serv. Indus., Inc.*, 460 F.3d 201, 206 (2d Cir. 2006). Summary judgment is warranted when, after construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor, there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c); *see June v. Town of Westfield*, 370 F.3d 255, 257 (2d Cir. 2004).

*B.     Representation of an Estate by a Pro Se Litigant*

A person who has not been admitted to the practice of law may not represent anybody other than himself. *Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007); *see also* 28 U.S.C. § 1654. The law contains so many esoteric pitfalls for an untrained advocate—even one as capable as Mr. Guest has shown himself to be—that the risk of inadvertent waiver or abandonment of an issue is too high for us to allow a *pro se* litigant to represent another person. This rule exists to serve not only "the interests of the represented party" but also "the interests of the adversaries and the court," *Pridgen*, 113 F.3d at 393, because the entire judicial system benefits from the professional knowledge of practicing attorneys, *see Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20, 22 (2d Cir. 1983). Accordingly, we consider whether all parties before the court are properly represented even in cases where the parties themselves do not raise the issue. *See Wenger v. Canastota Cent. Sch. Dist.*, 146 F.3d 123, 125 (2d Cir. 1998), *overruled on other grounds by Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516 (2007).

We have previously held that "an administr[ator] or execut[or] of an estate may not proceed *pro se* when the estate has beneficiaries or creditors other than the litigant." *Pridgen*, 113 F.3d at 393. Where there are other beneficiaries, "an action cannot be described as the litigant's own, because the personal interests of the estate, other survivors, and possible creditors . . . will be affected by the outcome of the proceedings." *Iannaccone v. Law*, 142 F.3d 553, 559 (2d Cir. 1998). But we have reserved the question of whether an administrator or executor of an estate may proceed *pro se* when the estate has no creditors and no beneficiaries other than the administrator. *See Pridgen*, 113 F.3d at 393.[4]

Under New York law, Mr. Guest's first claim, a wrongful death action, "is brought . . . on behalf of the decedent's distributees." *George v. Mt. Sinai Hosp.*, 47 N.Y.2d 170, 176 (1979); *see* N.Y. Estates, Powers & Trusts Law ("EPTL") § 5-4.1. His second claim, for the injuries Kristine sustained, is brought on behalf of all of the estate's beneficiaries. *See* EPTL § 11-3.2. When Mr. Guest brought his appeal, his wife was both a distributee and a beneficiary of Kristine's estate. Were that still the case, Mr. Guest would be unable to represent the estate. But, after argument, Mrs. Guest disclaimed any legal interest in Kristine's estate, and Mr. Guest affirmed that the estate has no creditors. As a result, we face the question left open in *Pridgen*:

---

[4] It appears that no federal appellate court has explicitly answered this question, either in the affirmative or the negative. The question has been expressly left open in two circuits. *See Gray v. Martinez*, No. 08-2968, 2009 U.S. App. LEXIS 25490, at *4 n.1 (3d Cir. Nov. 19, 2009); *Malone v. Nielson*, 474 F.3d 934, 937 n.2 (7th Cir. 2007). Three circuit courts have cited *Pridgen* in a way that implies that the bar on representation is limited to cases in which an estate has other beneficiaries or creditors, although none has clearly held it to be so. *See Jones v. Corr. Med. Servs., Inc.*, 401 F.3d 950, 951-52 (8th Cir. 2005); *Witherspoon v. Jeffords Agency, Inc.*, No. 03-1467, 88 Fed. App'x 659, 659 (4th Cir. 2004) (unpublished per curiam) (remanding to the district court "to ascertain whether there are any other interested parties to the Estate"); *Shepherd v. Wellman*, 313 F.3d 963, 970-71 (6th Cir. 2002).

9

may the administrator of an estate appear *pro se* if the estate has no other beneficiaries, distributees, or creditors?

We hold that the administrator and sole beneficiary of an estate with no creditors may appear *pro se* on behalf of the estate. It is only a legal fiction that assigns the sole beneficiary's claims to a paper entity—the estate—rather than the beneficiary himself. Accordingly, *pro se* representation is consistent with our jurisprudence both on the right to self-representation and on the prohibition of appearances by non-attorneys on behalf of others. Because the administrator is the only party affected by the disposition of the suit, he is, in fact, appearing solely on his own behalf. This being so, the dangers that accompany lay lawyering are outweighed by the right to self-representation, which we have described as "a right of high standing, not simply a practice to be honored or dishonored by a court depending on its assessment of the desiderata of a particular case." *O'Reilly v. N.Y. Times Co.*, 692 F.2d 863, 867 (2d Cir. 1982). Mr. Guest, therefore, is capable of proceeding in this appeal, and we may turn to the merits of his claims.

C.      *Defendants' Liability Under New York Tort Law*

As a threshold matter, a defendant may only be liable in a negligence action where the defendant owed a duty of care to the plaintiff. *Hamilton v. Beretta U.S.A. Corp.*, 96 N.Y.2d 222, 232 (2001). Under New York law, colleges have no legal duty to shield students or their guests from the harmful off-campus activity of other students. *Eiseman v. State*, 70 N.Y.2d 175, 190 (1987). They do not act *in loco parentis*. *Id.* Similarly, a defendant "has no duty to control the conduct of third persons so as to prevent them from harming others, even where as a practical matter defendant can exercise such control." *D'Amico v. Christie*, 71 N.Y.2d 76, 88 (1987) (citations omitted). Nor does a defendant assume such a duty by observing, but failing to stop,

10

dangerous activity. *See Heard v. City of N.Y.*, 82 N.Y.2d 66, 73 (1993) (finding a lifeguard did not assume a duty of care where the lifeguard, after warning a teenager not to dive in a specific area of a municipal beach due to hazards, later permitted the teenager to dive because the diver "was in no worse position once the lifeguard acquiesced in his dive than if the lifeguard had stood by and done nothing"). This analysis does not change merely because a danger is foreseeable. *Eiseman*, 70 N.Y.2d at 187. ("Foreseeability of injury does not determine the existence of duty." (citation omitted)).

As a result, although we sympathize with Mr. Guest for his tragic loss, we conclude that the district court properly granted summary judgment. Assuming *arguendo* that the College had the ability to control off-campus social activities, it was under no obligation to do so. Moreover, the fact that Marra knew students were congregating on the lake did not mean that she was required to ban their activities on this off-campus site. The same conclusion obtains even if the drinking at issue began on the College's premises because Kristine and Rau left school property prior to the accident and the circumstances of their return—in the early morning hours, in dark and foggy conditions, and only for the instant of the accident—did not permit the College to supervise Kristine's activities or those of Rau driving the snowmobile on which Kristine was killed. *See D'Amico*, 71 N.Y.2d at 85 ("[A] landowner may have responsibility for injuries caused by an intoxicated guest . . . . [but] liability may be imposed only for injuries that occurred on defendant's property, or in an area under defendant's control, where defendant had the opportunity to supervise the intoxicated guest."); *Paul v. Hogan*, 392 N.Y.S.2d 766, 768 (4th Dep't 1977) (finding hosts of a party were not negligent in the death of an individual who consumed alcoholic beverages at the party and was then struck by a motorcycle driven by

11

another partygoer, to whom the hosts had also served alcohol). While New York has suggested that landowners may be liable for dangerous conditions that they "created or contributed to," *Galindo v. Town of Clarkstown*, 2 N.Y.3d 633, 636 (2004), this theory of liability is quite narrow and does not appear to apply to activities that are dangerous independent of the landowner's actions. *See Haymon v. Pettit*, 9 N.Y.3d 324, 328-29 (2007) (finding no liability for a baseball park operator that encouraged fans to chase foul balls across a street, where "[t]he dangers of crossing the street—and individuals electing to cross it in pursuit of foul balls—exist independent of the [defendant's] promotion").[5]

* * *

Accordingly, we AFFIRM the judgment of the District Court.

---

[5] The author of this opinion agrees with his colleagues that an administrator is allowed to represent an estate *pro se* where that estate has no other beneficiaries, distributees, or creditors. But he respectfully disagrees with their resolution of the merits of Mr. Guest's claim at this stage. Although he finds the legal basis for that claim dubious, as they do, he finds the boundaries of the novel form of liability suggested in *Galindo* and *Haymon* sufficiently unclear that certification to the New York Court of Appeals seems to him appropriate. *See* 2d Cir. R. 27.2; *see also Zakzrewska v. New Sch.*, 574 F.3d 24, 27 (2d Cir. 2009).