24-2021-cv
*Simmons v. Incorp. Vill. of Rockville Ctr.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 21st day of October, two thousand twenty-five.

PRESENT:
> SUSAN L. CARNEY,
> RICHARD J. SULLIVAN,
> EUNICE C. LEE,
> *Circuit Judges.*

_____

Caril Simmons, individually, and as administratrix of the estates of Charles Griffin and Geraldine Griffin, deceased, Craig Griffin,

> *Plaintiffs-Appellants,*

Charles Griffin, individually, Lance Griffin, individually, The Griffin Family,

> *Plaintiffs,*

v.                                          24-2021

Incorporated Village of Rockville Centre, all employees, agents, servants, volunteers, identified and unidentified, without exception within such legal identity in their official capacity, including individuals listed individually, John Gooch, Building Inspector, individually, Thomas Bunting, John Thorp, Fire Chief, individually, Peter Klugewicz, Chief Fire Safety Inspector, individually, Daniel Casella, Building Superintendent, individually, Francis X. Murray, Mayor, individually,

*Defendants-Appellees*,

John and/or Jane Does,

*Defendants*.

_____

**For Plaintiffs-Appellants:**          Caril Simmons, *pro se*, West Babylon, NY, Craig Griffin, *pro se*, Rockville Centre, NY.

**For Defendants-Appellees:**          Steven E. Snair, Bartlett LLP, Melville, NY.

2

Appeal from a judgment of the United States District Court for the Eastern District of New York (Hector Gonzalez, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the June 28, 2024 judgment of the district court is **AFFIRMED** in part and **REMANDED** in part for further proceedings.

Caril Simmons – individually and on behalf of the estates of her late parents, Charles and Geraldine Griffin – and her brother Craig Griffin, both proceeding *pro se*, appeal from the district court's entry of judgment in favor of the defendants, the Incorporated Village of Rockville Centre ("Rockville Centre") and several of its employees, in connection with the defendants' alleged intrusions onto the Griffins' residential property. We assume the parties' familiarity with the facts, the procedural history, and the issues on appeal.

## I. Simmons's Representation of Her Parents' Estates

Before reaching the merits of this appeal, we address whether Simmons may properly represent the estates of Charles and Geraldine.[1]

By statute, the parties to a federal action may proceed only "personally"

---

[1] In the interest of clarity, we refer to members of the Griffin family (except Simmons) by their first names.

(*i.e.*, *pro se*) or through qualified counsel. 28 U.S.C. § 1654. Thus, "a person ordinarily may not appear *pro se* in the cause of another person or entity." *Pridgen v. Andresen*, 113 F.3d 391, 393 (2d Cir. 1997). As we have explained, "the law contains so many esoteric pitfalls for an untrained advocate that the risk of inadvertent waiver or abandonment of an issue is too high for [courts] to allow a *pro se* litigant to represent another person." *Clark v. Santander Bank, N.A.*, 122 F.4th 56, 60 (2d Cir. 2024) (alterations adopted and internal quotation marks omitted). We have therefore held that courts should "consider whether all parties before the court are properly represented even in cases where the parties themselves do not raise the issue." *Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010).

Here, both Charles and Geraldine were alive at the commencement of this lawsuit and, soon thereafter, counsel appeared on the family's behalf. Geraldine passed away sometime before May 2015, when an amended complaint was filed. Simmons was appointed executor of Geraldine's estate by September 2016 and was still represented by counsel at that time. But in February 2019, the plaintiffs, including Simmons as executor of Geraldine's

4

estate, began proceeding *pro se*. After Charles also passed away, Simmons moved to substitute herself as the representative of the estates of both of her parents. Simmons then proceeded *pro se* as the administrator of both estates and now seeks to represent the estates in this appeal.

The administrator or executor of an estate, however, may proceed *pro se* on the estate's behalf only when the estate has no beneficiaries other than the administrator, and no creditors. *Guest*, 603 F.3d at 21. In that circumstance, because "the administrator is the only party affected by the disposition of the suit, he is, in fact, appearing solely on his own behalf." *Id.* But "an administrator or executor of an estate may not proceed *pro se* when the estate has beneficiaries or creditors other than the litigant." *Id.* at 20 (alterations adopted and internal quotation marks omitted). In that situation, "an action cannot be described as the litigant's own, because the personal interests of the estate, other survivors, and possible creditors will be affected by the outcome of the proceedings." *Id.* (alteration adopted and internal quotation marks omitted).

Here, the record is unclear as to whether Simmons is the sole beneficiary of Charles's and Geraldine's estates or whether the estate has any creditors. We

5

therefore are unable to determine whether Simmons may properly represent those estates on appeal. Accordingly, we will remand this matter in part pursuant to *United States v. Jacobson*, 15 F.3d 19 (2d Cir. 1994), with directions to the district court to conduct further fact-finding and determine whether Simmons is the sole beneficiary of her parents' estates and whether there have been any other creditors. *See* 28 U.S.C. § 2106 (authorizing courts of appeals to "require such further proceedings to be had as may be just under the circumstances"). If the district court determines that Simmons's representation of her parents' estates is improper and the estates are unable to timely retain counsel, it should consider whether further relief, including dismissal of the estates' claims without prejudice, is appropriate.

That leaves the question of how to proceed with respect to Simmons's and Craig's individual claims. Although it is unclear whether Simmons may properly represent her parents' estates, there is no question that she may continue to litigate *pro se* in her individual capacity. Craig, too, may properly represent himself in this appeal. We therefore proceed to consider the merits of Simmons's and Craig's individual claims.

6

## II. Simmons's and Craig's Challenges to the District Court's Dismissal Orders

Simmons (in her individual capacity) and Craig challenge the district court's dismissal of several of their claims, both at the pleading stage and on reconsideration of its order granting in part the defendants' motion to dismiss.

We review *de novo* a district court's dismissal of a claim under Federal Rule of Civil Procedure 12(b)(6), "accepting the allegations in the complaint as true and drawing all reasonable inferences in favor of the plaintiff." *Palmer v. Amazon.com, Inc.*, 51 F.4th 491, 503 (2d Cir. 2022). To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), which would "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, the complaint "must 'raise a reasonable expectation that discovery will reveal evidence' of the wrongdoing alleged." *Citizens United v. Schneiderman*, 882 F.3d 374, 380 (2d Cir. 2018) (quoting *Twombly*, 550 U.S. at 556).

Simmons first argues that the district court erred in dismissing for lack of Fourth Amendment standing her section 1983 claims based on the defendants'

alleged searches of the Griffins' property in July 2012, August 2012, and May 2013. We disagree.

Although a reasonable expectation of privacy may arise from a sufficient "degree of acceptance into the household" residing at the relevant property, Simmons's allegations are too vague to support a plausible inference that she had a reasonable expectation of privacy in the Griffins' property at the time of the alleged searches. *Figueroa v. Mazza*, 825 F.3d 89, 108 (2d Cir. 2016) (quoting *Minnesota v. Carter*, 525 U.S. 83, 90 (1998)). For instance, Simmons's cursory allegation that she "regularly" spent time at the Griffins' property, Supp. App'x at 202, says nothing about how frequently she stayed over or whether she had been staying over around the time of the alleged searches. If, for example, Simmons (who maintained a home elsewhere) only "regularly" stayed over when visiting her parents each year for the holidays, it would be implausible that she had a reasonable expectation of privacy in the property. Her allegation that she "maintained a bedroom on the property," *id.* at 204, without any factual elaboration, similarly fails to support a reasonable expectation of privacy. In the end, these sparse allegations and the lack of temporal context regarding

8

Simmons's connection to the Griffins' property render impossible any assessment of whether Simmons plausibly enjoyed a sufficient degree of acceptance into the Griffin household to trigger the Fourth Amendment's protections. Thus, the district court did not err in dismissing Simmons's Fourth Amendment claims for failure to plausibly allege a reasonable expectation of privacy.

Simmons and Craig also challenge the district court's dismissal of their Fourth Amendment claims based on the alleged search of the Griffins' property on August 20, 2012. But the operative complaint contains only vague allegations regarding the nature and manner of that alleged search, making it impossible to assess whether any search that might have occurred was plausibly unreasonable within the meaning of the Fourth Amendment. We therefore agree that Simmons and Craig failed to plausibly allege that the defendants' conduct on August 20, 2012, violated the Fourth Amendment.

Next, Simmons and Craig argue that the district court erred in dismissing their trespass claims arising out of the alleged July 2012 search for failure to comply with the notice-of-claim requirement set forth in N.Y. C.P.L.R. § 217-a.

9

According to Simmons and Craig, the notice of claim they submitted on July 30, 2013, is timely because the alleged searches in July 2012 and May 2013 are part of the same continuing violation. But Simmons and Craig failed to present that argument to the district court in their opposition to the defendants' motion for reconsideration. We therefore decline to address it now in the first instance. *See In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 132 (2d Cir. 2008) ("It is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal." (alteration adopted and internal quotation marks omitted)).

Simmons and Craig next challenge the district court's dismissal of their section 1983 claims against Rockville Centre, a municipal corporation, and against the village's mayor, Francis X. Murray. We see no error, however, in the district court's determination that the operative complaint fails to plausibly allege the existence of a relevant municipal "policy or custom," *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978), or a failure on the part of any relevant decisionmakers to properly train or supervise their subordinates, *Connick v. Thompson*, 563 U.S. 51, 61 (2011). And the complaint's allegations

10

regarding Mayor Murray's involvement in the events underlying Simmons's and Craig's claims are simply too vague and speculative to state a claim against him individually.

Finally, Simmons and Craig argue that the district court erred in dismissing their substantive due process claims. But "[t]o establish a substantive due process violation, [a plaintiff] must show that the [government's] alleged acts . . . were arbitrary, conscience-shocking, or oppressive in the constitutional sense, not merely incorrect or ill-advised." *Ferran v. Town of Nassau*, 471 F.3d 363, 369–70 (2d Cir. 2006) (internal quotation marks omitted). And as the district court explained, Simmons and Craig fail to allege any conduct by the defendants rising to that level. The district court therefore properly dismissed Simmons's and Craig's due process claims.

## III.   Craig's Challenges to the District Court's Summary Judgment Orders

Craig also argues that the district court erred in granting summary judgment in the defendants' favor on his section 1983 claims regarding the alleged incidents on July 17, 2012 and May 1, 2013.

We review *de novo* a district court's grant of summary judgment.

11

*Windward Bora, LLC v. Wilmington Sav. Fund Soc'y, FSB*, 982 F.3d 139, 141 (2d Cir. 2020). "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Galloway v. County of Nassau*, 141 F.4th 417, 422–23 (2d Cir. 2025) (quoting Fed. R. Civ. P. 56(a)). In determining whether a party is entitled to summary judgment, we "constru[e] the evidence in the light most favorable to the non-movant." *Alberty v. Hunter*, 144 F.4th 408, 414 (2d Cir. 2025) (internal quotation marks omitted).

### A. July 17, 2012 Search

Craig first challenges the district court's grant of summary judgment on his claim involving the defendants' alleged search of the Griffins' property on July 17, 2012. Specifically, Craig argues that the district court ignored genuine disputes of material fact in concluding that Building Department Superintendent Daniel Casella and building inspector John Gooch did not commit a search of the Griffins' property on that day within the meaning of the Fourth Amendment. We disagree.

As the district court accurately observed, "the record is devoid of any

12

evidence that Casella and Gooch engaged in an unlawful search on July 17, 2012." Sp. App'x at 323. On appeal, Craig contends that the district court disregarded the fact that "Casella admits they did an inspection of the Griffin[] property without consent." Appellants' Br. at 79. But regardless of consent, it is well-established that "officers need not shield their eyes when passing by the home on public thoroughfares," and that in approaching a home, an officer may do "no more than any private citizen might do." *Florida v. Jardines*, 569 U.S. 1, 7–8 (2013) (internal quotation marks omitted). Here, Craig identifies no facts in the record from which a reasonable jury could conclude that Casella and Gooch's inspection of the Griffins' property in July 2012 violated these principles. To the contrary, the record indicates that Gooch and Casella relied solely on observations made from publicly accessible areas, such as the mailman's route leading up to the residence.

We therefore perceive no error in the district court's determination that Craig's section 1983 claim based on the events of July 2012 fails as a matter of law.

13

**B. May 1, 2013 Search**

Craig also challenges the district court's grant of summary judgment in the defendants' favor with respect to the entry onto the Griffins' property that took place on May 1, 2013. It is undisputed that Casella, Gooch, building inspector Thomas Bunting, Chief Fire Safety Inspector Peter Klugewicz, and Fire Chief John Thorp visited the Griffins' property that day without a warrant and cut a padlock on a gate in order to access the Griffins' backyard. The district court, however, determined that these defendants were entitled to qualified immunity based on an objectively reasonable belief that the intrusion was justified by exigent circumstances.

In light of the record evidence of the condition of the Griffins' property when the defendants arrived, we agree with the district court that an objectively reasonable firefighter or building inspector could have believed that an immediate search of the premises for hazardous conditions was necessary to protect the public from an exigent risk of fire. *See Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995) ("The objective reasonableness test is met—and the defendant is entitled to immunity—if 'officers of reasonable competence could disagree' on

14

the legality of the defendant's actions." (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986))).

Upon their arrival, the defendants found the Griffins' property in a "hazardous" and "threatening" condition. Supp. App'x at 120, 126, 128. Klugewicz noticed a "strong smell of gas" emanating from the property, *id.* at 128, and the defendants also observed a worn extension cord on the porch. In addition, the property's yard was "completely overgrown," the residence's windows "could not be seen as they were blocked with extreme dirt and packed with clothes from inside the house," and the premises were "so cluttered with motor vehicle parts, wires, debris, and propane [tanks] that it was a fire hazard." *Id.* at 120, 131. The defendants accordingly determined that it was necessary to shut off the electrical service to the property and to immediately investigate the source of the smell.

Craig has not identified any competent evidence in the record creating a genuine dispute of material fact regarding the defendants' description of the conditions of the Griffins' property on May 1, 2013.[2] Instead, Craig maintains

---

[2] Craig, for instance, suggests that the defendants perceived the gas smell only *after* conducting a search of the premises. But while it is not entirely clear whether Bunting first noticed a smell

15

that the defendants – and Klugewicz in particular – lied about the smell of gas to concoct a legal justification for the search. Yet "[b]road, conclusory attacks on the credibility of a witness will not, by themselves, present questions of material fact." *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005).

In the end, while the degree of urgency facing the defendants at the time of the search may be debatable, "we cannot say that only someone plainly incompetent or who knowingly violates the law would have perceived a sufficient threat and acted as [the defendants] did." *Mullenix v. Luna*, 577 U.S. 7, 15 (2015) (alteration adopted and internal quotation marks omitted). Accordingly, we affirm the district court's grant of summary judgment in the defendants' favor as to the May 2013 search.

\* \* \*

before or after the search, Klugewicz maintained in his affidavit that he noticed the smell of gas upon his arrival at the premises. Craig also makes much of the fact that there was no gas service to the Griffins' property at the time of the search. As the district court explained, however, the mere fact that the smell might have been something other than what defendants believed does not disentitle them to qualified immunity.

16

We have considered Simmons's and Craig's remaining arguments and find them to be without merit.  Accordingly, we **AFFIRM** the district court's judgment with respect to the claims brought by Simmons and Craig in their individual capacities, and **REMAND** to allow the district court to consider in the first instance whether Simmons properly represented Charles's and Geraldine's estates.

Unless the district court enters an amended judgment, the estates may restore this appeal within thirty days of the district court's decision resolving the question of Simmons's representation of her parents' estates by notifying the Clerk of Court, and without having to pay any additional filing fee.  Any such further proceedings will be assigned to this panel.  If an amended judgment is entered, this appeal will be terminated.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

17